# Pullman Palace Car Company

## *v.*

## Chester M. Smith.

1. Sleeping cars—*proprietors of, not liable as innkeepers.* The owners of sleeping cars, who receive pay in advance from lodgers merely for the sleeping accommodation afforded by their cars, and this only from a particular class of persons, and for a particular berth, and for a particular trip, are not liable as innkeepers for money that may be stolen from the person of such lodgers on their cars.

2. Same—*proprietors of, not liable as carriers.* The proprietors of sleeping cars who only furnish sleeping accommodations for travelers who have paid for their transportation to the railroad company over whose road the sleeping car runs, no part of which pay for transportation is received by the owners of the sleeping cars, are not carriers, and can not be held liable as such for property lost by or stolen from lodgers whilst on their cars.

Appeal from the Superior Court of Cook county; the Hon. Joseph E. Gary, Judge, presiding.

This was an action brought by Chester M. Smith, appellee, against the Pullman Palace Car Company, appellant, for the recovery of $1180, claimed to have been lost from the Pullman sleeping car Missouri, on the night of December 17, 1872, under the following circumstances: On the afternoon of Dec. 17, 1872, appellee started from his home in Oconomowoc, Wis., for a point in Missouri southwest of St. Louis, for the purpose of buying horses and mules. He purchased a ticket through to St. Louis, *via* the Milwaukee and St. Paul railway, to Chicago, thence to St. Louis over the Alton and St. Louis railway, for which he paid $15.25. He arrived at Chicago about eight o'clock in the evening of the same day, went to the office of appellant and bought a sleeping-car ticket from Chicago to East St. Louis, for which he paid the sum of $2, and took a berth in the Pullman car, which left Chicago for St. Louis at nine o'clock P. M. His money, $1180, was in an inside vest pocket, and when he retired for the night the vest was placed under his pillow; in the morning he found the vest as he left it, but the money was gone.

On behalf of the Pullman Palace Car Company, it appeared that they have no place to store valuables, and that their agents are instructed to receive no parcels, valuables, or money, and receive no pay for baggage or valuables of any kind, but only to take pay for the occupancy of the berths; and that they do not receive packages, valuables or money from passengers on the car to take charge of. Upon the back of their checks, which are given when the tickets are taken up, is printed the following: "Wearing apparel or baggage, placed in the car, will be entirely at the owner's risk." They receive into their cars only those who have a first-class passage ticket, or a proper pass from the railroad company; passengers secure their berths for a particular trip and for a particular berth and car, paying in advance. The company has no interest in the fare paid by the passenger to the railroad company for transportation, and the railroad company has no interest in the prices paid the Pullman Palace Car Company for berths; the

latter receive pay for sleeping accommodations, none whatever for transportation.

The court below gave the following instruction to the jury:

" If the jury believe, from the evidence, that the plaintiff, while sleeping in the defendant's car on the trip from Chicago to Alton, was robbed of a sum of money which he there had with him, then the verdict should be in his favor for the sum of which he was so robbed, unless the same was greater than would be an ordinary and reasonable sum for a traveler to carry with him for traveling expenses, only, upon such a journey, as the plaintiff was then upon his return home; in which case he should only recover such ordinary and reasonable sum, to which the jury may, if they think proper, add interest at six per cent for fourteen months."

The jury returned a verdict for the plaintiff for $277, upon which judgment was rendered, to reverse which the Pullman Palace Car Company took this appeal.

Messrs. Walker, Dexter & Smith, for the appellant.

Messrs. Shufeldt, Ball & Westover, for the appellee.

Mr. Justice Sheldon delivered the opinion of the Court:

The instruction which the court gave to the jury made the company responsible as insurer for the safety of the money, imposing upon it the severe liability of an innkeeper or common carrier.   And it is the position which appellee's counsel take, that the relation between the parties in this case was that of inn-keeper and guest, and that the liability of the company is that of an innkeeper.

In order to ascertain whether the extraordinary responsibility claimed, here exists, it becomes important to inquire into the nature of inns and guests, where this liability was imposed by the common law, and see whether the description of the same properly applies here.

Kent, in defining an inn, says: " It must be a house kept

open publicly for the lodging and entertainment of travelers in general, for a reasonable consideration. If a person lets lodgings only, and upon a previous contract with every person who comes, and does not afford entertainment for the public at large, indiscriminately, it is not a common inn." 2 Kent Com. 595. This is substantially the same definition as is given in all the books upon the subject.

But the keeper of a mere coffee-house, or private boarding or lodging house, is not an innkeeper, in the sense of the law. Id. 596; *Dansey* v. *Richardson*, 3 Ellis & B. 144; (E. C. L. vol. 77); *Holder* v. *Toulby*, 98 E. C. L. 254; *Kisten* v. *Hilderbrand*, 9 B. Munroe, 72. It must be a common inn, that is, an inn kept for travelers generally, and not merely for a short season of the year, and for select persons who are lodgers. Story on Bailm. sec. 475, and cases cited in note. The duty of innkeepers extends chiefly to the entertaining and harboring of travelers, finding them victuals and lodgings, and securing the goods and effects of their guests; and, therefore, if one who keeps a common inn refuses either to receive a traveler as a guest into his house, or to find him victuals and lodging, upon his tendering him a reasonable price for the same, he is not only liable to render damages for the injury in an action on the case, at the suit of the party grieved, but also may be indicted and fined at the suit of the king. 3 Bac. Ab. Inns and Innkeepers, C. The custody of the goods of his guest is part and parcel of the innkeeper's contract to feed, lodge and accommodate the guest for a suitable reward. 2 Kent Com. 592.

From the authorities already cited, it is manifest that this Pullman palace car falls quite short of filling the character of a common inn, and the Pullman Palace Car Company, that of an innkeeper.

It does not, like the innkeeper, undertake to accommodate the traveling public, indiscriminately, with lodging and entertainment.

It only undertakes to accommodate a certain class, those

who have already paid their fare and are provided with a first-class ticket, entitling them to ride to a particular place.

It does not undertake to furnish victuals and lodging, but lodging alone, as we understand. There is a dining car attached to the train, as shown, but not owned by the Pullman company, nor run by them. It belongs to another company, the Chicago and Alton Dining Car Association. Appellant, as we understand, furnishes no accommodation whatever, save the use of the berth and bed, and a place and conveniences for toilet purposes. We would not have it implied, however, that even were these eating accommodations furnished by appellant, it would vary our decision; but the not furnishing entertainment is a lack of one of the features of an inn.

The innkeeper is obliged to receive and care for all the goods and property of the traveler which he may choose to take with him upon the journey. Appellant does not receive pay for, nor undertake to care for, any property or goods whatever, and notoriously refuses to do so. The custody of the goods of the traveler is not, as in the case of the innkeeper, accessory to the principal contract to feed, lodge and accommodate the guest for a suitable reward, because no such contract is made.

The same necessity does not exist here, as in the case of a common inn. At the time when this custom of an innkeeper's liability had origin, wherever the end of the day's journey of the wayfaring man brought him, there he was obliged to stop for the night, and intrust his goods and baggage into the custody of the innkeeper. But here, the traveler was not compelled to accept the additional comfort of a sleeping car; he might have remained in the ordinary car; and there were easy methods within his reach by which both money and baggage could be safely transported. On the train which bore him were a baggage and express car, and there was no necessity of imposing this duty and liability on appellant.

It can not be supposed that any such measure of duty or liability attached to appellant, as is declared in the quotation cited from Bacon's Abridgement to belong to an innkeeper. The accommodation furnished appellee was in accordance with

an express contract entered into when he bought his berth ticket at Chicago, which was for the use of a specified couch from Chicago to St. Louis, and appellant did not render a service made mandatory by law, as in the case of an innkeeper.

But if it should be deemed that, on principle merely, this company would be required to take as much care of the goods of a lodger, as an innkeeper of those of a guest, the same may be said with reference to the keeper of a boarding-house, or of a lodging-house. In *Dansey* v. *Richardson, supra,* where the innkeeper's liability was refused to be extended to a boarding-house keeper, it was said by Coleridge, J.: "The liability of the innkeeper, as, indeed, other incidents to his position, do not, however, stand on mere reason, but on custom, growing out of a state of society no longer existing." In *Holder* v. *Toulby, supra,* where it was held the law imposed no duty upon a lodging-house keeper to take due care of the goods of a lodger, *Calye's case,* 8 Co. Rep. 32, was designated as *fous juris* upon this subject, where it was expressly resolved, that, though an innkeeper is responsible for the safety of the goods of a guest, a lodging-house keeper is not. And in *Parker* v. *Flint,* 12 Mod. 255, "if," says Lord Holt, "one come to an inn and make a previous contract for lodging for a set time, and do not eat or drink there, he is no guest, but a lodger, and, as such, is not under the innkeeper's protection; but if he eat or drink there, it is otherwise, or if he pay for his diet there, though he do not take it there."

The peculiar liability of the innkeeper is one of great rigor, and should not be extended beyond its proper limits. We are satisfied that there is no precedent or principle for the imposition of such a liability upon appellant.

Appellant is not liable as a carrier. It made no contract to carry. Appellee was being carried by the railroad company; and if appellant were a carrier, it would not be liable for the loss in this case, because the money was not delivered into the possession or custody of appellant, which would be essential to its liability as carrier. *Town* v. *The Utica and Schenectady Railroad Co.* 7 Hill, 47. In 2d vol. Redf. Am. Railw. Cases,

138, it is said: " But it has never been claimed that the passenger carrier is responsible for the acts of pickpockets at their stations, or upon steamboats and railway carriages."

It would be unreasonable to make the company responsible for the loss of money which was never intrusted to its custody at all, of which it had no information, and which the owner had concealed upon his own person. The exposure to the hazard of liability for losses through collusion, for pretended claims of loss where there would be no means of disproof, would make the responsibility claimed a fearful one. Appellee assumed the exclusive custody of his money, adopted his own measures for its safe-keeping by himself, and we think his must be the responsibility of its loss.

We hold the instruction to be erroneous, and the judgment of the court below will be reversed, and the cause remanded.

*Judgment reversed.*