## Case No. 1,574.

### BLUM v. SOUTHERN PULLMAN PALACE CAR CO.

[1 Flip. 500;[1] 22 Int. Rev. Rec. 305; 3 Cent. Law J. 591.]

Circuit Court, W. D. Tennessee. Feb. 12, 1876.

LIABILITY OF SLEEPING CAR COMPANIES FOR MONEY LOST— SLEEPING CAR COMPANY NOT LIABLE AS A COMMON CARRIER.

Neither as a common carrier nor as an innkeeper is a sleeping car company responsible. It must not only furnish a berth to its guests, but keep a watch during the night, exclude unauthorized persons from the car and take reasonable care towards preventing thefts. If loss should occur by reason of negligence in this regard, the company is liable for such articles as are usually carried by a passenger about his person, and such a sum as may be deemed reasonably necessary for traveling expenses.

At law.

D. K. McRae, for plaintiff.
Humes & Poston, for defendant.

Charge of the court delivered by BROWN, District Judge:

Gentlemen of the jury: This is an action to recover of the defendant the sum of $3,135, lost by the plaintiff while riding upon a sleeping car owned and controlled by the defendant.

The plaintiff left Cairo, in the state of Illinois, about five o'clock in the evening of March 28, 1873, taking the boat down the river to Columbus, Kentucky. On the boat, he purchased a through ticket by rail from Columbus to Memphis, and, shortly after midnight, entered the sleeping car of the defendant at Humboldt, Tennessee, in which he was assigned a lower berth in the section nearest the front end of the car. He disrobed himself of his outer garments, placed his waistcoat, in an inside pocket of which was a wallet containing the money in question, under his pillow, lay down and went to sleep. The train arrived at Memphis between three and four in the morning, but the plaintiff did not rise, except for a temporary purpose hereafter explained, until about seven o'clock. Meanwhile, the other passengers had all left the car. A conductor and porter employed by the defendant had charge of the car, to which the conductor and brakemen of the train also had access for the purpose of collecting fares and regulating its movements. Prior to entering his berth, plaintiff paid the conductor of the car $2, for his lodging, and at the same time handed him his through ticket to Memphis to be delivered to the conductor of the train. In rising to dress himself, the plaintiff found his waistcoat and money were missing. The important question of law is presented as to the measure of defendant's liability.

The first count in the declaration charges defendant with the responsibility of a com-

[1] [Reported by William Searcy Flippin, Esq., and here reprinted by permission.]

mon carrier, but there is no evidence to support it, and it was virtually abandoned upon the argument. The contract of carriage was with the railway company. It received the ticket of the plaintiff, offered him accommodation in its passenger car, and was ready to receive his luggage in another car adapted to that purpose. It drew the sleeping car of the defendant, collected fares of its passengers, controlled its movements and provided for its safety. Plaintiff's contract with the railway company was entirely distinct from that with the defendant.

It is strenuously insisted by plaintiff's counsel, however, the defendant should be held to the responsibility of an inn-keeper. If the liability of an inn-keeper at common law does not extend to all losses of his guests not caused by an act of God, the public enemies or the negligence of the guest himself, as held by the older authorities, he is at least presumptively responsible for all injuries happening to the goods of his guests entrusted to his care, and can only exonerate himself by showing that he did all to ensure their safety which it was in his power to do, and that no default is attributable to his servants or guests. In regard to goods stolen from his custody, without evidence to show how, or by whom, it was done, his liability is the same of that of a carrier. It is admitted that if the defendant is held as an inn-keeper, it is liable for the loss of the money in question. The plaintiff's counsel have produced no case directly in point, nor has the defendant produced any authorities determining definitely the scope of liability in such cases, although the supreme court of Illinois has recently decided that the responsibility of a sleeping car company is not that of an inn-keeper. The analogy is certainly a strong one between the hotel and sleeping car. The passenger is invited to undress, and go to sleep in a bed provided for that purpose. To accept this invitation his vigilance must be relaxed, and his clothing and purse exposed to thieves. But the rigid responsibility of inn-keepers and carriers at common law was imposed in older and more troublous times, when goods were carried in common wagons, passengers traveled by coach, making frequent stops at houses of public entertainment, whose proprietors frequently colluded with thieves and highwaymen to plunder their guests. While the ancient rule is still enforced as against those classes of persons, the tendency of modern legislation and judicial opinion has been to limit it strictly to them. The keeper of a private boarding or lodging house, or of a restaurant or coffee house is not an inn-keeper in the view of the law, notwithstanding he may furnish lodgings or food, or both, for the entertainment of his guests. It has also been held that the proprietor of a hotel, for summer resort, is not an inn-keeper. Notwithstanding an inn-keeper was responsible for the loss of the horses and carriage of his guest, the keeper of a livery stable is liable only as bailee for negligence. So, also, notwithstanding seeming analogies in their positions, the liability of common carriers has not been extended to warehousemen, wharfingers, telegraph companies or ordinary bailees. In all these cases, except the last, the opportunities for plunder are no less favorable than those of carriers and inn-keepers. The liability of the inn-keeper, indeed, stands less upon reason than upon custom growing out a state of society no longer existing.

There are good reasons for not extending such liability to the proprietor of a sleeping car.

1st—The peculiar construction of sleeping cars is such as to render it almost impossible for the company, even with the most careful watch, to protect the occupants of berths from being plundered by the occupants of adjoining sections. All the berths open upon a common aisle, and are secured only by a curtain, behind which a hand may be slipped from an adjoining or lower berth with scarcely a possibility of detection.

2d—As a compensation for his extraordinary liability, the inn-keeper has a lien upon the goods of his guests for the price of their entertainment. I know of no instance where the proprietor of a sleeping car has ever asserted such lien, and it is presumed that none such exists. The fact that he is paid in advance does not weaken the argument, as inn-keepers are also entitled to pre-payment.

3d—The inn-keeper is obliged to receive every guest who applies for entertainment. The sleeping car receives only first-class passengers traveling upon that particular road, and it has not yet been decided that it is bound to receive those.

4th—The inn-keeper is bound to furnish food as well as lodging and to receive and care for the goods of his guests, and, unless otherwise provided by statute, his liability is unrestricted in amount. The sleeping car furnishes a bed only, and that, too, usually for a single night. It furnishes no food, and receives no luggage, in the ordinary sense of the term. The conveniences of the toilet are simply an incident to the lodging.

5th—The conveniences of a public inn are an imperative necessity to the traveler, who must otherwise depend on private hospitality for his accommodation, notoriously an uncertain reliance. The traveler by rail, however, is under no obligation to take a sleeping car. The railway offers him an ordinary coach, and cares for his goods and effects in a van especially provided for that purpose.

6th—The inn-keeper may exclude from his house every one but his own servants and guests. The sleeping car is obliged to admit the employes of the train to collect fares and control its movements.

7th—The sleeping car can not even protect its guests, for the conductor of the train has

a right to put them off for non-payment of fare, or violation of its rules and regulations.

I hold, therefore, that sleeping car companies are not subject to the responsibility of inn-keepers at common law, and that defendant cannot be held liable upon that ground.

The scope of the liability of companies of this kind, so far as I know, has never been judicially determined. It is, undoubtedly, the law that where a passenger does not deliver his property to a carrier, but retains the exclusive possession and control of it himself, the carrier is not liable in case of a loss, as, for instance, when a passenger's pocket is picked, or an overcoat or satchel is taken from a seat occupied by him. Upon this theory, it is insisted by defendant that it cannot be held liable for negligence, inasmuch as the clothing and effects of its guests are never formally delivered to it. I cannot for a moment accede to this proposition. It is scarcely necessary to say that a person asleep cannot retain manual possession or control of anything. The invitation to make use of the bed carries with it an invitation to sleep, and an implied agreement to take reasonable care of the guest's effects while he is in such a state that care, upon his own part, is impossible. There is all the delivery which the circumstances of the case admit. I think it should keep a watch during the night, see to it that no unauthorized persons intrude themselves into the car, and take reasonable care to prevent thefts by the occupants. Defendant's own testimony tends to show a custom on its part to keep a man on watch all night, and to keep the rear door locked. Upon the night in question, however, both the conductor and porter were asleep at the rear end of car for two or three hours prior to the arrival of the train at Memphis, leaving the front door unlocked and a brakeman sitting in the front end of the car. If you find the loss was occasioned by the negligence of the defendant in this particular, and that the plaintiff himself was guilty of no negligence, you will find for the plaintiff. It is proved, however, that the plaintiff arose once or twice during the night, either before or after the arrival of the train at Memphis, to get a drink of water at a washstand immediately adjoining his section, but separated from it by a board partition, leaving his waistcoat under his pillow. There is some conflict of evidence as to whether he could see his berth from where he was standing. If you find the plaintiff guilty of negligence in this regard, and that this negligence contributed to his loss, then he is not entitled to recover, notwithstanding the defendant was also guilty of negligence in the particulars above specified.

The measure of damages only remains to be considered. The plaintiff again claims the benefit of the law applicable to inn-keepers, and insists upon his right to recover for the entire amount of his loss. The same reasoning would entitle him to recover a fortune if he had seen fit to carry it about his person and lay it under his pillow, and this, too, in the absence of notice to the company. The defendant, however, like a common carrier of passengers, is liable only for such property as the passenger may reasonably be supposed to carry about his person. It extends to his clothing and personal ornaments, the small articles of luggage usually carried in the hand, and a reasonable sum of money for his traveling expenses. A man may lawfully carry any sum of money he chooses about his person, but with the modern facilities for obtaining drafts and sending money by express, it is, to say the least, imprudent to carry a large amount. As defendant received but two dollars for the use of its berth, it would be grossly unjust to mulct it in any sum the plaintiff may choose to swear he has lost, when the charges, simply, of transmitting this amount by express, might have been double or quadruple the price paid for the accommodation. The rule claimed by plaintiff would place carriers and owners of sleeping cars completely at the mercy of unscrupulous and designing men. It was, at least, the duty of the plaintiff to notify the conductor of the amount he carried about him, though even then it is very doubtful whether he could have charged him with the responsibility.

The substance of the law, then, is this: the defendant was not only bound to furnish the plaintiff with a berth for his accommodation, but to keep watch and take reasonable care that he suffered no loss. If plaintiff's loss was occasioned by the want of such care, and his own negligence did not contribute to it, he is entitled to recover such sum as you may deem reasonably necessary for his personal expenses, considering the length of his journey, and all the other circumstances of the case.

The jury returned a verdict for $100.