KATES *v.* PULLMAN'S PALACE CAR COMPANY.

1. Relatively to a passenger occupying a berth in a sleeping-car, for which he has paid the customary fare, a sleeping-car company is under the duty of maintaining such watch and guard while the passenger is sleeping as may be reasonably necessary to secure the safety of such money, jewels and baggage as he may properly carry on his person or have in his possession while traveling in the car; and if, while he is asleep, such property is taken from his possession, the burden is upon the company of showing the loss did not occur because of a failure upon the part of its employees to discharge this duty.

2. That the loss of the property was occasioned through the negligence of the passenger, would ordinarily be a good defense; but where it appears that the acts of the passenger alleged to be negligent were caused by the wrongful conduct of the company itself, the latter is estopped from claiming immunity because of such acts.

3. Proper diligence on the part of a sleeping-car company towards one of its patrons involves the exercise of ordinary care in looking out for and taking care of such property as may by him be casually left in a car of the company upon his leaving it, and the restitution of the property to the owner when ascertained; and where such property is actually found by the servants of the company, or is left or dropped in such place and under such circumstances as that, by the exercise of ordinary care, it ought to have been found by them, the company will be liable for its value.
July 8, 1895.

Action for damages. Before Judge Van Epps. City court of Atlanta. November term, 1894.

From plaintiff's testimony the following appears: He went to the passenger depot in Atlanta to take the train for Jacksonville, Florida. He had $125 in money and certain plans and specifications contained in an envelope. He bought a sleeping-car ticket, went to the platform of the Pullman car, and asked the conductor of that car if that was the car that went to Jacksonville. The conductor replied, "Yes, but I do not know if this car will go through to Jacksonville. You go on and take your seat, and I will get orders before we leave here, whether or not it goes through. If it don't go through, I will put you in the Brunswick car and you can change at Jesup." Plaintiff went in and sat down, and after the train started out the Pullman conductor gave him his berth to go to bed, and told him the car would go through to Jacksonville, taking from him his sleeping-car ticket and giving him a berth-check in exchange therefor. Upon this check were the words, "Passenger's check. Car Cuna. From Atlanta to Jacksonville," followed by the conductor's signature. Plaintiff undressed and prepared for bed, put his money ($115) into the envelope with his papers, placed the envelope in the inside pocket of his vest, put his vest under his pillow, laid himself down and went to sleep. The train started from Atlanta about one o'clock A.M. No one was in this car but himself, the conductor and the porter of the car.

When the train reached Macon plaintiff was awakened by the noise of uncoupling this car from the one next to it, and heard a man on the outside say, "Get that man out of there, and damned quick, or I will go off and leave him." About the same time the porter came and punched him and said, "Get up quick, or you will be left." Plaintiff had to be in Jacksonville the next day at three o'clock, and he arose hurriedly and gathered up his clothes and shoes and started to the next car. After going a few steps he thought of his vest which he had forgotten, and rushed back, jerked it out and put it with the rest of his clothes. When he got into the other car, which was a Mann car, he sat down and lighted a cigar. He was somewhat excited. When he pulled his vest from the berth he did not think of his money or papers. He was in a hurry. He could not have got out of the car any quicker if it had been on fire. After smoking his cigar he prepared himself to lie down, and on putting his vest in the same place as before, he discovered that his money and papers were gone. He looked through his other clothes and found they had not dropped amongst the same. He looked all around the apartment he was in, but did not find them. He thought they would find his name on the envelope and return it to him. About an hour afterwards he reported the matter to the conductor, and when he reached Jacksonville, reported the matter to the manager of the Pullman Palace Car Company, who told him they had no business to leave that car in Macon, and that the one he came on was the one they should have left, and the one they put him out of was the one they should have brought to Jacksonville. Neither his money nor his papers were ever restored to him. At the time he bought his ticket in Atlanta he took $10 from the roll of money. In another part of his testimony he says, that he heard a conversation between the Pullman con-

ductor and the train conductor as to whether the car on which he started would go to Jacksonville or not. They were in that car when the train conductor came through after the train started out. The Pullman conductor asked the train conductor if he knew whether this car was going through to Jacksonville, and the latter replied, "Most assuredly it is going through." The Pullman conductor said, "Then I can put this gentleman to bed," to which the other replied, "Why, certainly you can put him to bed." After that assurance was given, plaintiff went to bed. When he left the car he was closely followed by the porter, who had his valise. Upon the reverse side of the berth-ticket before mentioned, is the following statement, among others: "Baggage, wearing apparel, money, jewelry, and other valuables taken into the car will be entirely at owner's risk, and employees of this company are forbidden to take charge of the same."

P. H. ADAMS and MAYSON & HILL, for plaintiff.
JACKSON & LEFTWICH, for defendant.

LUMPKIN, Justice.

This was an action against a sleeping-car company by a passenger for the alleged loss of property, and resulted in a nonsuit. The substance of the material evidence is stated by the reporter.

1. We shall not undertake in the present case to state definitely the precise relation existing between a sleeping-car company and its patrons, nor to draw a limit as to the value or kinds of property which a passenger may properly have and carry about his person when traveling in a sleeping-car. The character of the business in which the company is engaged necessarily imports a duty on its part to exercise some watch-care over the passenger, and, within certain reasonable limits, over his property as well. He is invited to enter the car for

the purpose of sleep, and is expected to sleep. He may properly take with him a reasonable amount of money, and such baggage as his comfort and convenience may require. While asleep he cannot, in the nature of things, look after the safety of his effects; and therefore the company is bound to maintain such watch and guard during the hours of the night as may be reasonably necessary to secure the safety of the passenger's property. If a loss occurs, the burden of proof is on the company of showing that it exercised this degree of diligence, and that the loss was not occasioned because of a failure on the part of its employees to do so. This rule of evidence rests upon the general and well-recognized principle that where it is peculiarly within the power of one of the parties to a case to produce evidence, he is under an obligation to do so.

The plaintiff, while asleep, could not possibly know what became of his lost effects. The employees of the company, or at least one of them, presumably would know all about it; or if not, ought to be in a position to explain the cause of his ignorance. Although it does not affirmatively appear in the present case that the plaintiff's property was lost while he was asleep, yet as the evidence warranted an inference that it was, the company was called upon to present its defense, and in so doing, to carry the burden above indicated. Under the facts disclosed by the plaintiff's evidence, the question as to when the loss did in fact occur ought to have been left to the determination of the jury.

2. The main contention of the defendant was, that the plaintiff's own evidence showed affirmatively that the loss of his money and papers resulted from a failure on his part to take the proper care of them, and that consequently he should not be allowed to recover their value from the company. The reply to this is, that if the plaintiff failed to exercise the care requisite to insure

the safety of his effects, the acts on his part alleged to be negligent seem to have been brought about by the wrongful conduct of the company itself. His destination was Jacksonville, and before he retired for the night he was assured by the conductor that if the car in which a berth was assigned to him did not go through to Jacksonville, he would be put into another car; and finally, the plaintiff was positively assured that the car in which he had retired would certainly go through to his destination. It turned out that this was not true; and the circumstances under which the plaintiff was rushed out of that car and into another at an intermediate station, show clearly that he was not allowed a reasonable opportunity to properly look after and take care of his effects; and in the hurry and excitement occasioned by his hasty transfer from one car to another, there was much to excuse him for failing to observe that degree of care which, under ordinary circumstances, he would rightly be expected to exercise. At any rate, the jury should be allowed to determine whether or not, under all the circumstances, the defendant is estopped from claiming immunity because of the plaintiff's failure to exercise that care which would, beyond all question, have insured the safety of his property.

3. It very frequently happens that a passenger in a sleeping-car, upon leaving the same, casually leaves in the car some article of personal property. When this occurs, the article so left does not become the property of the company; but on the contrary, it is under a duty of exercising at least some care in looking out for and taking care of any article thus left, and if possible, of restoring it to the owner when ascertained. We do not think the rule of extraordinary diligence applies in such a case, but certainly it is not requiring too much of the company to hold it bound to be at least ordinarily careful in discovering, taking care of and restoring property

thus left in a car. It is unquestionably true that when such property is found by a servant of the company, he is bound to take care of it; for this is nothing more than common honesty requires, a failure to observe which should not excuse the company. A less stringent rule is applicable when it does not appear that the property in question is actually found by a servant of the company, but is left or dropped in such place, or under such circumstances, as would enable the servants of the company, by the exercise of ordinary care, to discover it. In the latter case, the duty would still be upon the company of showing that it did in fact exercise that degree of care in the premises.

Upon a full review of the entire case, we think it one which should have been submitted to a jury, and that the court erred in granting a nonsuit.

*Judgment reversed.*