## PULLMAN'S PALACE CAR COMPANY *v.* HARVEY.

The declaration stated a cause of action; the charge of the court was substantially in accord with the principles announced in the case of *Kates* v. *Pullman's Palace Car Co.*, 95 *Ga.* 810, and according to the ruling in that case there was no error in refusing to charge as requested; no error was committed in excluding evidence; the verdict is supported by the evidence, and the finding of the jury having been approved by the trial judge, his discretion in overruling the motion for a new trial will not be disturbed.

Argued June 15, — Decided July 10, 1897.

Action for damages.    Before Judge Norwood.    City court of Savannah.    July term, 1896.

Harvey sued Pullman's Palace Car Company for $185 as the value of a diamond scarf-pin which he claimed to have lost while a passenger in its sleeping-car, on account of its negligence. The defendant demurred to the petition, and the demurrer was overruled. The plaintiff obtained a verdict for the amount sued for, and the company's motion for a new trial was overruled. It excepted to each of the rulings stated.

The declaration alleges, that on January 13, 1895, plaintiff entered into a contract with defendant, whereby it agreed to furnish him with accommodation in its sleeping-car Tourist from Savannah to Waycross; that he paid the fare charged for such accommodation, and by said contract defendant undertook to use reasonable and proper diligence in guarding and protecting him and his property from loss by theft while he slept, during usual hours of sleep, in a berth assigned to him on that car; that on going to bed in said berth he undressed and placed his wearing-apparel in that part of the berth provided for such purpose, including his necktie or scarf containing the pin, and while he was asleep during the night, some person unknown to him stole the pin from the scarf; that de-

fendant did not use due care and diligence by its agents and servants employed on and in charge of the car, in watching and guarding him and his property while he was asleep, and so carelessly and negligently maintained such watch and guard that by and through its negligence his diamond pin was stolen and wholly lost to him, to his damage $185.

The grounds of demurrer were, that no cause of action is alleged, and that the allegations of negligence are too vague and uncertain and fail to show any act which constituted negligence.

The testimony was conflicting. Plaintiff testified positively to the loss of the pin while he was asleep upon the car, and that it was in the scarf when he went to bed, which scarf he placed in the rack inside of the berth. He could not swear that the scarf did not fall to the floor, but when he awoke in the morning the scarf was at the place where he put it before going to sleep, with the pin gone therefrom. He paid $185 for it and had owned it about twelve months. He admitted taking two small drinks of cocktail on that night. Defendant introduced testimony to show, that plaintiff probably did not have the pin when he came into the car, that a sufficient watch over the car was kept by the porter and conductor thereof, and that plaintiff and another passenger (to whom plaintiff lent $2.00 to pay for a berth) drank a half-pint of cocktail while upon the car. During the night the porter went out of the car and stood on the steps of it while it was at a station for a few minutes, but everybody in the car at that time seemed to him to be asleep.

The motion for a new trial alleges, in addition to the general grounds, that the court erred in refusing to give the following charges as requested.

"The ordinary diligence which the defendant was required to exercise in caring for the plaintiff Harvey and his property, is that care which every prudent man takes of his own property of a similar nature. If the defendant company did exercise this ordinary care and diligence, then plaintiff can not recover, even if you should find that he has proven that his diamond pin was lost while he was an occupant of the sleep-

ing-car. Whether or not this pin was lost on the sleeping-car is, of course, a question for you to determine, and the court expresses no opinion on this point. Sleeping-car companies do not occupy the same relation to occupants of its cars as a railroad company does to its passengers; it is not bound to exercise extraordinary care and diligence. The accommodation offered implies a certain degree of privacy for the passenger upon his retirement to rest. The defendant company does not contract to keep espionage and watch from theft by passengers on its cars. One who avails himself of the comfort afforded in such cars does so with the full knowledge of the fact that others, whose character the company can not possibly know, may become fellow-travelers with himself, and that the arrangements of the car into berths and sleeping-chairs is such that he may necessarily, while asleep, be subject to easy approach by any dishonest traveler in the same car. The risk of loss from such persons he assumes as an incident of his circumstances, and the company can only be made responsible by evidence of its neglect to keep that reasonable and ordinary guard and care over him.

"Proof of mere loss will not place the burden upon the defendant company, but the plaintiff must prove negligence on the part of the defendant, which occasioned the loss of the property, and must show that by reason of such negligence the loss occurred.

"The degree of care and the kind of watch which this defendant was required to exercise towards the plaintiff and his property while he was upon its car depends upon the contract entered into between the plaintiff and the defendant. You can not go outside of this contract to determine what manner of watch and guard was to be kept over the plaintiff and his property; only ordinary and reasonable care and diligence is required of the defendant, and if you find that the defendant exercised ordinary and reasonable care and diligence towards the plaintiff and kept that guard and watch over him and his effects which it contracted to do, then your verdict must be for the defendant, for, in that case, the defendant, the Pullman Palace Car Company, would not be liable.

"When this defendant company shows that it has exercised ordinary and reasonable care and diligence in watching the plaintiff and guarding his effects, then the burden is upon the plaintiff to show that the alleged loss, if you find there was a loss, was caused by the negligence of the defendant company, and until it makes satisfactory proof of this, you would not be warranted in finding for the plaintiff and against the defendant sleeping-car company."

Also, in giving the following charges: "A railroad company or a common carrier is bound to extraordinary diligence as to passengers and property, whereas the Pullman Palace Car Company, not being a common carrier, is bound to exercise ordinary diligence—sufficient to protect the property of its passengers; and on that point I charge you in the language of the Supreme Court of Georgia: 'Relatively to a passenger occupying a berth in a sleeping-car, for which he has paid the customary fare, a sleeping-car company is under the duty of maintaining such watch and guard while the passenger is sleeping as may be reasonably necessary to secure the safety of such money, jewels and baggage as he may properly carry on his person or have in his possession while traveling in the car; and if, while he is asleep, such property is taken from his possession, the burden is upon the company of showing the loss did not occur because of a failure upon the part of its employees to discharge this duty.' If you find, therefore, that this pin was lost on board of that car, then it becomes the duty of the Pullman Company to exonerate itself by showing that it was not through the negligence of its employees." The objection taken to this instruction is, that it does not clearly define the degree of diligence required of defendant, and in fact requires more than ordinary diligence; and that it places upon defendant the burden, after proof of loss, of showing that the loss did not occur because of the failure of its employees to discharge their duty, and that the loss did not occur through their negligence.

And in charging as follows: "That would bring you to consider the facts in connection with the undressing of the plaintiff—whether he put his pin in a proper place, and if

he did not put it in a proper place, whether he contributed to the loss himself; to illustrate what I mean: If he had taken off his four-in-hand tie with the pin in it, and put it on one of the seats and gone to bed in his sleeper, he would be contributing to the loss, and if it had been lost he could not recover under those circumstances." It is objected that the illustration improperly limited what would be contributory negligence by plaintiff, and that such charge would seem to indicate that any lesser negligence than that shown by the illustration so given would not defeat a recovery; the negligence so illustrated amounting to gross negligence.

Also, in ruling out the following testimony of plaintiff: "I intended to go to Valdosta the day before, but I had some business so that I could not go. Afterwards I intended to go on the seven o'clock train on the evening of the 12th. I left on the morning of the 13th. I had a business matter to attend to, which prevented my going at six or seven o'clock on the evening of the 12th. From then to the morning of the 13th I had no personal encounter; there was a matter of difference between a party and myself; I do not know that it is necessary to say with whom; I did not have a personal encounter at all, or any harsh words indulged in. The matter of difference between myself and a party was about seven o'clock on the evening of the 12th." And in refusing to allow the defendant's counsel to ask the plaintiff if he was not trying to check a lady's trunk on the night of the 12th, or early on the morning of the 13th. And in refusing to allow the counsel for the defendant to ask the plaintiff if he did not come very near to being arrested that night, or was not arrested, or about to be arrested that night; and further, whether or not he was trying to leave on the seven o'clock train on the evening of the 12th, or on the train on January 13th, about one o'clock, with a married lady of Savannah; defendant's counsel explaining that the purpose of this testimony was to show the condition of the plaintiff during the 12th of January and early on the morning of January 13th, and that he was in such a condition on account of this that he would be excited, and the jury should consider this in determining what

degree of credit they would attach to the plaintiff's evidence, as he might very easily be mistaken under these circumstances in his belief that his pin was in his cravat when he retired on board of the Pullman car on January 12th or 13th.

*Erwin, duBignon & Chisholm* and *W. L. Clay,* for plaintiff in error.

*J. M. Dreyer, W. P. Hardee* and *W. R. Leaken,* contra.

SIMMONS, C. J.    In the argument of this case a request was made for the court to review and reverse a portion of what was ruled in the case of *Kates* v. *Pullman's Palace Car Co.,* 95 *Ga.* 810.    After a very careful consideration of that case, we adhere thereto and decline to overrule it.    The principles laid down in that case govern and control the one now under consideration, and it is unnecessary to repeat what was said there or to further elaborate the argument of Mr. Justice Lumpkin.

The court in the charge to the jury followed substantially the rules laid down in the case above mentioned; and inasmuch as the charges requested were contrary to these rulings, there was no error in refusing to give them.    The evidence sought to be introduced, which was excluded by the court, was clearly inadmissible.    The evidence as to the loss of the diamond pin and as to the diligence of the employees of the company was conflicting; the jury believed the plaintiff; the trial judge was satisfied with the verdict, and this court will not undertake to control his discretion in refusing a new trial.

The law as to the liability of sleeping-car companies is not well settled.    Courts in different States have laid down different rules as to their liability.    Judges in the Federal courts likewise differ.    Would it not be well for the Congress of the United States, if it has the power, or for the States to legislate upon this subject and to define the exact liability of these companies?    Why not apply to them the law of innkeepers?    It would protect the property of the passengers and would certainly protect these companies from a great many suits upon alleged fraudulent claims which are sometimes brought against them.    It seems to me that with a very little expense in procuring a small iron safe for each car, the company could protect itself against these constantly recurring claims of the loss

of diamonds and purses. This is thrown out merely as a suggestion, but with the hope that Congress or the State legislatures will act upon the matter and define the liability of the sleeping-car companies.

*Judgment affirmed. All the Justices concurring.*