PULLMAN'S PALACE CAR COMPANY *v.* HALL.

106  765
e126 612

106  765
e128 144

1. A sleeping-car company is not liable to a passenger for the loss by theft of personal effects taken into the car by the passenger for his own use and of which he retains possession, either under the rules which apply to an innkeeper for the loss of the goods of his guest, or those as to a carrier for the loss of baggage intrusted to it to transport. Such a company owes to a passenger the duty of exercising reasonable care to guard the property of the passenger from theft, and if through the want of such care the personal effects of the passenger, such as he might reasonably carry with him, are stolen, the company is liable therefor. But if such reasonable care shall have been used, and such personal goods are stolen by one not its employee, such company is not responsible for the loss.
2. The company having shown in this case, that after the car had gone about one mile from the station, and in crossing another road, the speed had been reduced to about five or six miles an hour, that the rear door was securely locked, that the conductor and porter were guarding the open door in front, when it appears that a thief on the *outside caught* on to the moving car, and, standing on a rod underneath the car, took the valise from the seat and drew it through the window, the loss of the valise is not to be attributed, under the circumstances of the theft, to the want of reasonable care exercised by the company for its protection. The company not being an insurer of the goods against theft, nor having the exclusive custody of the valise for transportation, and showing its servants to be on watch at the only open entrance to the car at the time, reasonable care would not require it also to specially guard the windows of a moving train.

LEWIS, J., dissenting. In view of the admitted facts upon which this case was tried before a jury in a justice's court, and the legitimate inferences that may be drawn therefrom, as well as in view of an absence of proof on material points which the admission leaves in doubt, there was testimony authorizing the conclusion that the defendant company had not overcome the burden resting upon it to show it was in the exercise of

reasonable care in protecting the property of the passenger from theft. Such questions being peculiarly for the jury, and the only error assigned in the petition for certiorari being that the verdict was contrary to law and evidence, the judge of the superior court did not abuse his discretion in overruling the petition.

Argued December 13, 1898.— Decided March 16, 1899.

Certiorari.    Before Judge Lumpkin.    Fulton superior court. March term, 1898.

*Dorsey, Brewster & Howell* and *Hugh M. Dorsey*, for plaintiff in error.    *W. J. Speairs*, contra.

LITTLE, J.    The defendant in error brought suit in a justice's court against the car company for $30.50, being the value of a valise and its contents.    Judgment in his favor was rendered for the amount for which he sued.    The car company filed its petition for certiorari, after hearing which, the judge of the superior court sustained the judgment rendered in the justice's court, and dismissed the certiorari.    The car company excepted.    The case was tried in the justice's court on an agreed statement of facts, as follows:    "It is agreed that L. H. Hall, the plaintiff, was a passenger on the car Suwanee on October 25th, 1894, said car leaving Cincinnati at 8 p. m.; that said passenger, Hall, occupied room H, assigned him by porter, porter placing valise therein in said car.    Said passenger, Hall, took on board the articles set out in the bill of particulars attached to the suit, and it is agreed that the valuation therein placed on said articles is correct and reasonable.    L. H. Hall was accompanied by W. C. Rawson.    They engaged two lower berths in the same stateroom, and on going into the stateroom found the window up and put the window down.    They together left their valises in the stateroom and went forward to the smoking-room just before the train started.    Afterwards as they were leaving the station and as they were passing through yard, and as train No. 3 on the Q. & C., this being train Hall was on, was slowing up at the C., H. & D. crossing about one mile from the central depot, from which they started and from where plaintiff boarded the train, the porter, Wright, caught a young man taking a large and small valise from the room H. When the thief saw the porter he dropped the large valise but

succeeded in getting away with the small valise, this being the valise of the plaintiff. At this point the porter ran forward to the smoking-room and pulled the air-cord, and was asked at that time, by Mr. Rawson, what he was doing that for, when he informed Rawson that some one had stolen a valise out of one of the staterooms. Rawson and Hall went back to see, and found that the thief had gotten Mr. Hall's, and would have gotten Rawson's but for the efforts of the porter who caught Rawson's valise as the thief was taking it through the window. One door of the car was locked, and the conductor and the porter stood at the open end of the car, and Rawson does not know how the thief could have gotten in the car, as every one was required to show a ticket before entering station and a sleeping-car ticket before getting on board the car. Valise was taken from open window in the side of car from room H, the thief being on outside clinging to window and standing on hog-chain of car. The porter, Wright, was in the aisle of the car at the time, and saw two tramps hanging on the outside of car and ran them off. Conductor's attention was immediately called to same, and train was stopped, but too late to get the valise. By the time the train had stopped the men had gotten too far away, and it was impossible to catch them. No suspicious person was noticed by the conductor or porter in the car. As train passed by Big 4 yards where the valise was stolen, it was going at the rate of from five to six miles an hour. Conductor and porter did all they could to save valise after thief was discovered."

1. Under these admitted facts the question arises, first, what is the liability of a sleeping-car company to its passengers for personal baggage which the passenger takes with him in the sleeping-car. This court has, in two cases heretofore considered, ruled upon the liability of a sleeping-car company for the loss of goods of a passenger, where the same were lost at night when the passenger was sleeping.

In the case of *Kates* v. *Pullman's Palace Car Company*, 95 *Ga.* 810, the action was to recover the value of certain money and papers which, it was alleged, were taken from the pocket of the plaintiff's clothing at night. This court in that case did not

undertake to define the precise relation which existed between a sleeping-car company and a passenger; but ruled that, from the character of the business in which the company was engaged, a duty on the part of the company was created, to exercise some watch and care over the passenger, and, within certain reasonable limits, over his property as well, and that if a loss occurs the burden of proof is on the company of showing that it exercised such reasonable care, during the hours of the night, as was necessary to secure the safety of the passenger's property, and that the loss was not occasioned because of the failure on the part of the employees of the company to do so. The other case to which we refer is that of the *Pullman's Palace Car Company* v. *Harvey*, 101 *Ga.* 733. There this court was asked to reverse the ruling made in the *Kates* case, supra, but, after consideration, adhered to such ruling. Chief Justice Simmons, in rendering the opinion in the case, said : "The law as to the liability of sleeping-car companies is not well settled. Courts in different States have laid down different rules as to their liability." And he suggests that legislation should be had defining the exact liability of sleeping-car companies to a passenger for loss of goods. In determining the question now under consideration, it seems to be necessary to define and fix the rule of liability which attaches to a sleeping-car company for the loss of goods which were stolen by some one not in the employ of the company, and while the passenger was awake. A fair examination of the question renders it necessary to note that the passenger, whose valise was taken from his berth or stateroom under the evidence in this case, had, on reaching the car, delivered to the porter of the car his valise, as is customary, and that the valise had been taken to the stateroom or berth which had been assigned to the passenger, and in his presence there deposited; that finding the window to the berth or stateroom open, the passenger closed it, and then, leaving his valise, went forward to the smoking-room; that in no other manner did the company, by its employees, have charge of such baggage. Also the other facts, that the rear door of the car was locked, and the conductor and porter stood at the front door of the car; that while the car was in motion, the valise was taken

by a thief who stood on a rod underneath the car on the outside, and abstracted it through the window. In the case of Blum v. South Pull. P. Co., 1 Flip. 500, Fed. Cas. No. 1,574, as cited in Voss v. C., C. C. & St. L. Rwy. Co., 43 N. E. Rep. 20, a number of reasons are given why a sleeping-car company is not liable as an innkeeper. Among those reasons are, that the peculiar construction of sleeping-cars is such as to render it almost impossible for the company, even with the most careful watch, to protect the occupants of berths from being plundered by the occupants of adjoining sections; that the innkeeper is given a lien upon the goods of his guests for the price of their entertainment; that the innkeeper is obliged to receive every guest who applies for entertainment, while the sleeping-car company receives only first-class passengers; that the innkeeper is bound to furnish food as well as lodging, and to receive and care for the goods of his guests; and unless otherwise provided by statute, his liability is unrestricted in amount, while the sleeping-car company contracts to furnish a bed only; that the conveniences of the inn are imperative necessities to the traveler —a sleeping-car is not; that the innkeeper has a right to exclude from his house all but his guests and servants; the sleeping-car company must admit the employees of the train to collect fares and control its movements; that the sleeping-car company can not protect its guests in all particulars, because the conductor of the train has a right to put them off for non-payment of fare, or for a violation of rules. The court in that case then ruled, that sleeping-car companies are not subject to a passenger as an innkeeper.

The cases of Pullman Company v. Smith, in 73 Ill. 360, and of Pullman Company against Gailord, 23 Am. Law Reg., N. S., 788, hold that a sleeping-car company is not liable for loss of the effects of a passenger as a carrier, because it is not a carrier; that the railway company is the carrier; that the carrier's liability depends upon his possession of the goods; that a sleeping-car company does not have possession of the goods — they are in the control of the passenger. It was also ruled in Lewis v. New York Sleeping-Car Company, a Massachusetts case, reported in 28 Am. & Eng. R. R. Cases, 148, that a sleeping-car

company is not liable as a common carrier nor as an innholder. But each of these cases rules that it is a clear duty of the car company to use reasonable care to guard the personal effects of passengers from theft, and if through want of such care such effects as he might reasonably carry with him are stolen, the company is liable. The rule of liability is stated by the Texas Supreme Court in the case of Pullman Palace Car Co. *v.* Pollock, reported in 34 Am. & Eng. R. R. Cases, 217, as follows: "While a sleeping-car company does not assume towards personal baggage taken into a car by a passenger the duties and liabilities which the common law imposes upon common carriers as to ordinary freight, or upon an innkeeper as to guests, it is responsible in the same way as any common carrier for a failure to perform the duties which devolve upon a common carrier in relation to baggage of a passenger which is not given into its exclusive custody; and if, through a failure of the company to exercise reasonable care, the passenger's baggage is stolen, the company is liable therefor." In 2 Shear. & Redf. Neg. (5th ed.) § 526, the author, discussing this subject, says: "For obvious reasons, the rule of absolute liability of a carrier of goods or innkeeper is not extended to cases of theft from passengers occupying berths in a sleeping-car"; and, citing 124 N. Y. 53, says: "It is properly held, in view of such arrangements [of berths], and of the powerlessness of a sleeping passenger to defend his property from theft or his person from assault, that it is part of the contract of hiring the privilege of occupying a berth, that protection should be afforded him by the car-proprietor, with a degree of care and vigilance commensurate with the danger to which he is exposed." Mr. Wharton, in his Law of Negligence (7th ed.), § 610, says: "It has been urged that such a proprietor [sleeping-car company] is, if not a common carrier, a least an innkeeper, and therefore an insurer of the property of his guests. But it has been ruled in several cases that such a proprietor is not either a common carrier or an innkeeper, but is a special bailee, who is not an insurer, but is charged with the duty of exercising in his business a degree of care and diligence proportioned to risks to which those engaging places in his cars are exposed."

Elliott on Railroads, vol. 4, § 1623, sums up from the rules in adjudicated cases, as follows: "Our conclusion is, that where the passenger takes his baggage into the coach with him and does not place it in charge of the railroad company or of the sleeping-car company, neither company is liable unless the loss of the baggage was caused by the negligence of one of the companies." Ray, in his work on Negligence of Imposed Duties, Passenger Carriers, 241, 242, citing authorities, says: "While it [the sleeping-car company] is not liable as a common carrier or as an innholder, as is said by some of the authorities, . . it is its duty to use reasonable care to guard the passenger from personal injury and his property from theft, and if through want of such care . . the personal effects of a passenger, such as he might reasonably carry with him, are stolen, the company is liable therefor." See also, Stevenson v. Pullman Palace Car Co., a Texas case, 26 S. W. Rep. 112; 73 Ill. 360; 55 Mo. App. 474; 20 Fed. Rep. 437; Belden v. Pullman Palace Car Co. (Texas), 43 S. W. Rep. 22. While there are decisions of a number of courts which have held sleeping-car companies liable to a passenger for the loss of his baggage, as a common carrier, and others which apply the law of liability as that of innkeepers, the weight of authority, as we understand it, is, that such companies are not liable as innkeepers, nor as carriers, for personal effects taken with the passenger into the car and of which he retains possession. But it is the duty of such a company to use reasonable care to guard the property of the passenger from theft; and if through the want of such care the personal effects of a passenger, such as he might reasonably carry with him, are stolen, the company is liable therefor.

2. Such being the rule, the question which next arises is, was the property of the passenger stolen through the failure of the employees of the company to exercise reasonable care for the protection of his property? It will be borne in mind that the passenger was not sleeping when his goods were stolen. A higher degree of care to protect the goods of a sleeping passenger would seem to be required than that which it is necessary to exercise when the passenger is awake and able to protect them himself; and while extraordinary diligence is not, un-

der the law, required in either case, because the passenger does not entrust his effects to the company but retains possession himself for his own comfort and convenience, yet, having engaged the accommodations offered by the company for the purpose of sleep during proper hours, and paid for the same, and the company having accepted him with the implied agreement that he should do so, the care which is reasonable, to protect the goods of a sleeping passenger, must be exercised. And while the same degree of care in the case of a passenger awake might not be required, yet, in each case, such care as is reasonable under the circumstances is required — for the want of it the company is liable — having exercised it, it is not. The Court of Appeals of Missouri, 55 Mo. App. 474, in the case of Chamberlain *v.* Pullman Palace Car Co., held that, in a case where the porter in charge of the car was not directed to look after the effects of a passenger in his absence, " a passenger on a sleeping-car, who leaves his watch in his berth while he is in the toilet-room, is, as a matter of law, guilty of contributory negligence if it is stolen in his absence, and therefore can not recover from the company for the loss." Whether or not the property of the passenger, in the case at bar, was stolen because of the failure of the company to exercise reasonable care for its protection, must, of course, depend upon the manner in which, and by whom, the valise was stolen, and the precautions used to prevent the theft. The agreed statement of facts found in the record is somewhat confused. When critically examined, however, it appears that the train to which the sleeping-car was attached had left the station where the passenger boarded the car, and proceeded about a mile on its journey. The train reduced its speed to five or six miles an hour when it approached the crossing of another railroad. At that time one of the car doors was locked and the other guarded by an employee of the sleeping-car company. The valise was taken from the seat of the passenger on which it had been placed, through an open window, by a thief who was on the outside clinging to the window, and standing on the hog-chain of the car. The porter of the car was in the aisle, and ran off two tramps whom he saw hanging on the outside of the car, and discovered that another

thief had seized two valises. The porter caught one of the va-
lises as the thief was taking it through the window. The other
one he could not recover. Immediately the employees of the
car pulled the air-cord and had the train stopped, but the thief
had gotten away with one of the valises. The circumstances
of the theft were remarkable, and showed the perpetrator to
have been a very daring lawbreaker, willing to incur not only
the risk of violating the law, but his personal safety as well.
To guard all the windows of a moving car from rogues who
did not hesitate to risk their lives in catching hold of a mov-
ing train with the hope of abstracting valuables, would have
required extraordinary diligence. Such acts, ordinarily, are
not to be anticipated, and without such a degree of diligence
could not have been prevented. To have securely fastened one
of the doors of the car and guarded the other, while another
employee stood in the aisle, was certainly as much as any an-
ticipated danger would have required. Such precautions, in
our judgment, amounted at least to reasonable care; and no
greater diligence than this being required under the rule, the
company should not be held liable for the loss. For these rea-
sons, it is our opinion that the certiorari should have been sus-
tained and the judgment rendered in the justice's court set
aside.

   *Judgment reversed.    The other Justices concurring, except*

   LEWIS, J., dissenting. Under the view I take of this case, the
question decided by the first headnote is not involved. There
is no error of law complained of on account of any ruling or
view of the court below to the effect that a sleeping-car com-
pany is liable to its passenger for loss by theft of his baggage,
to the same extent as an innkeeper would be for the loss of the
goods of his guest, or a common carrier for the loss of baggage
entrusted to it by a passenger for transportation. The case was
tried on an agreed statement of facts before a jury in a justice's
court. The petition for certiorari complained simply that the
verdict was contrary to law and evidence. The order of the
judge overruling the certiorari does not indicate that he enter-
tained a different view of the degree of diligence required of the
company than is expressed by a majority of this court. That

order is as follows: "After hearing and considering this case, the verdict and judgment in the magistrate's court are affirmed and the certiorari dismissed. Negligence and diligence are peculiarly questions for the jury; and they may not only consider the facts admitted, but may draw inferences therefrom. Whether the porter was negligent in placing the valises where he did place them, whether the agents exercised due diligence in guarding the property, whether the window itself had proper catches or safeguards,— in fact all questions touching the conduct of the company and its employees were for the jury. I think there was enough to sustain their finding." In addition to the suggestions contained in the above judgment, attention is directed to the following points in the evidence: The sleeping-car porter placed the two valises in the stateroom of the two passengers. At this room was a window in the side of the car, which was open, and the passengers closed it down — probably to protect their goods from thieves. They then went into the smoker and never left there till after the larceny; hence never opened the window. The inference is reasonable that it was opened either by the porter or the thief. If by the former, he voluntarily and unnecessarily removed the protection given the baggage by the passengers. If by the latter, the evidence negativing the fact that the thief was inside of the car, he must have opened the window by force from the outside of the car while it was in motion — a very improbably theory; and if that was done, it does seem that the porter standing in the aisle by the exercise of ordinary diligence would have had his attention attracted to the elevation of the window by the trespasser in time to have prevented the theft, it being admitted that the porter was at the time standing in the aisle. The train started from the central depot of Cincinnati. It had gone but a mile and was running at a slow rate of speed, and the presumption is it had not gone to the limits of a populous portion of that large city. Besides these facts, it does not appear where the conductor was at this time and what he was doing. It is true it is stated that he and the porter were at the door where they were receiving passengers who were entering. If it refers to the entire time, then it contradicts other facts admitted. In one por-

tion of the admission it is stated that the porter at the time of the theft was in the aisle and seized the larger valise, thus preventing the thief from getting that also.   In another portion it is stated that at that time he saw two tramps on the outside of the car and ran them off.   It is difficult to understand how he could do so many things at the same time and be in different places.   As I understand it, it is conceded by my brethren that the burden of proof was on the company to show the exercise of reasonable care and diligence.   Could not the jury have inferred both from the evidence and the want of evidence that this burden had not been successfully carried?   I only allude to some of these points on the facts with a view of showing, to say the least of it, that whether the company was negligent or not is a reasonably debatable question; and this should be an end of the matter so far as the power of this court is concerned, after the jury have passed upon that issue, and the judge of the superior court, having carefully considered their finding and the evidence upon which it was based, has approved their verdict.   I therefore believe that the judgment of the court below should be affirmed, and respectfully dissent from the decision rendered by a majority of the court.