Bissell, P. J.,
delivered the opinion of the court.
In April, 1890, Freudenstein took passage on the Rio Grande Road for Sargent, Colorado. He was the holder of a first class railway ticket, and bought Pullman transportation on what is called a tourist sleeper between Denver and Sargent. The car was “No. 462,” and in charge of a porter named Allen. The tourist sleepers differ slightly from the first class Pullman, in that they have no drawing rooms and no lavatories which interfere with the general structure of the car. As in the case of all sleepers, the berths opened on a center aisle, were provided to a certain extent with head and foot boards which separated the occupants, and the sleepers were protected by curtains from the general view. There was nothing to obstruct the observation of the porter in charge, and he could see the entire car from door to door, and 'observe the movements and conduct of the passengers. Some evidence was offered concerning the movements of Freudenstein from the time he got on the car until the loss; but it is *541 sufficient to state that he went to bed after his berth was made up and hung his overcoat inside of the curtains which protected his berth, and went to sleep. Later in the night, he discovered that it was gone, got up and complained to the porter and together they made a search to find it, and observed the passengers alighting at Salida (which was a way station) to see if some person had taken it by mistake. The coat was not found, and the porter was unable to explain its disappearance. Some passengers got off at intermediate stations, hut what they took with them does not transpire. Freudenstein, at the trial of the case, proved the loss of the overcoat and rested. The company moved for a nonsuit, hut the motion was denied. They then put the porter on the stand, and he gave evidence that he was on duty and engaged in continuous watch of the car from the time it left Denver through the night until after the loss. On this proof, judgment was entered for the value of the coat and its contents, and the case was brought here on error.
The liability of the company, if any, under these facts must of necessity spring from the terms of some express contract between the company and the passenger, or a contract to he implied from the circumstances of the accidental relation of passenger and carrier. This relation must measurably determine the obligations of the Pullman company, and fix the extent to which the proof must go if they are to respond to losses of this description. It is familiar learning that nothing would excuse the innkeeper or the common carrier when called on for a guest’s goods, or what may have been delivered for transportation, except proof that the loss was occasioned by the acts of God or the king’s enemies. They were both adjudged to be practically insurers of the property. Storms and armed enemies in open rebellion alone operated to excuse default in performance. The law to this day has practically remained unchanged. With the exceptions and reservations contained in modern bills of lading, and admitted by the courts to he binding as contracts under some circumstances, or with the force and effect of notices, *542 agreements or statutes by which keepers of inns seek to limit what they are pleased to term the rigors of the common law, we have nothing to do. Without these, such servants of the public are held to a legitimate, advantageous and entirely proper accountability. An accountability fully warranted by their status and their profits. But the groundwork of the liability was found in the facts which gave rise to the relation and in the correlative advantages of the innkeeper and the carrier in the collection of their charges. The keeper of the inn was bound to receive the guests, and had a lien on his guests’ goods for the price of the entertainment. He furnished them food and lodging, and had the right to exclude from his house all but guests and servants of his own choosing. The carrier had the possession, sole custody and control of goods delivered to him for carriage, could enforce his lien for freight and retain possession until it was paid, and only his employees could interfere with it during the journey. The courts in a long series of adjudications have held that the Pullman company cannot be made liable for lost baggage on these grounds. They have held the rules governing innkeepers to be inapplicable, because of the difference in the existing conditions. The law of the carrier has been adjudged to be equally unsuitable because the possession was not exclusive. The latter difficulty does not seem to me to be entirely insurmountable. The possession of the Pullman company is practically as exclusive as that either of the innkeeper or the carrier. In either case, the risk of dishonest guests is always an element of danger which cannot be eliminated. No person has access to the cars except the Pullman servants and the railroad employees. It is no substantial enlargement of the risk to hold the Pullman company as guarantors for the honesty of these employees. No difficulty could be. experienced in reducing this element of risk to an insignificant minimum. Eliminating these features, the company does practically have possession of the travelers’ goods. There may not be the formal delivery, but the exclusive possession which ordinarily exempts the railroad company from *543 liability for lost baggage is not retained by the traveler. Of course, it is conceded that if the passenger by coach leaves his coat in the seat, and it be lost, the railroad company cannot be compelled to pay for it. They never had any possession on which a liability could be predicated. No such condition exists in a Pullman car. There the company has possession. A possession not at all similar to that which is called constructive. The passenger bujrs a place to sleep in, and when he hangs up his coat at the invitation of the Pullman company, he ought both truthfully and legally to be held to give his garment into the possession of the company.. If lost, they should be held liable. The only question is whether the loss alone is sufficient to fix the responsibility. The authorities hold otherwise. By an almost unbroken current, which has such volume and impetus that we do not feel vigorous or powerful enough to stem or turn it, courts have held that the basis of the liability is the proven negligence of the company. Wood’s Railway Law, vol. 3, § 368 et seq.; Thompson’s Carriers of Passengers, p. 531; Whitney v. Pullman Palace Car Co., 143 Mass. 243; Hillis v. The C. R. I. & P. R'way Co., 72 Iowa, 228; Scaling v. Pullman Palace Car Co., 24 Mo. Appeal, 29; Carpenter v. New York, N. H. & H. R. R. Co., 124 N. Y. 53; Pullman Palace Car Co. v. Pollock, 69 Texas, 120; Woodruff Sleeping & Parlor Coach Co. v. Diehl, 84 Ind. 474; Pullman Palace Car Co. v. Smith, 73 Ill. 360; Pullman Palace Car Co. v. Gardner, 16 A. & E. R. R. Cases, 324; Stearn v. Pullman Car Co., 8 Ontario, 171 (21 A. & E. R. R. Cases, 443); Steamboat Crystal Palace v. Vanderpool, 16 B. Mon. 302.
While we concede that the law has been thus settled, and that negligen ce must be shown before the plaintiff can recover, we do not agree with counsel as to what will discharge that duty. It is insisted that there must be positive evidence of a want of care, as’by proof of the absence of a proper and sufficient number of servants, a lack of the watch, which the cases decide the company must maintain, or some equivalent testimony showing the positive omission of what the law has *544 imposed as a part of the duty which the company owes the traveler to whom it has sold accommodations. This does not coincide with our views of the relative duties of the passenger and the carrier. The Pullman company had assumed a specific obligation by the sale of a ticket which entitled the traveler to a place to sleep. It was sold with the intention that it might be used for that purpose; when the berth is thus applied to the purposes for which it was sold, the company impliedly agrees that it will use due care to protect the property of the traveler. The passenger is sold a place to sleep which the vendor knows is to be used for that purpose. His personal belongings are taken to his apartment with the knowledge and assent of the seller. Thus this property is in the place provided by the company, put there with their consent and approbation, and practically surrendered to their control and care. When loss is shown, it does appear that the company was guilty of negligence sufficient to entitle the loser to recover. The breach occurs the instant the property is lost. To prove the loss is at least to make prima facie proof of the negligence of the company. It is enough to put the company to proof of due care and the maintenance of a proper supervision of the car and its occupants. The burden is then cast on them to prove watch or whatever else may be necessary to establish due care and want of negligence on their part. To shift the burden of this on to the traveler puts him to such a positive disadvantage that nothing short of an imperative necessity would lead us to accept this conclusion. The present case was brought within this rule. The plaintiff proved loss' and rested, nonsuit was denied and the defendant produced evidence which if credited entitled them to judgment. This proof has been fully stated. The porter in charge of the car was put on the stand and testified to an absolutely continuous watch during the entire night. This must be taken as true, for there was nothing to contravene it. We have no alternative but to accept it as veracious. It establishes due care on the part of the company. The known and well understood conditions of modern travel show the *545 impossibility of exact knowledge of the property of the departing passenger who may leave at an intermediate station. If the company is permitted to escape the absolute liability of the innkeeper, such care and diligence as is consistent with proven and well understood conditions can only be exacted. In the present case, the company discharged this duty. The negligence which alone justifies a recovery against them is not established by the evidence, and the judgment against them cannot therefore be sustained.
What a subsequent trial may disclose cannot be foreseen. The judgment will therefore be reversed and the case sent back for a new trial.

Reversed.