## Voss *v.* Wagner Palace Car Company et al.

[No. 1,823. Filed Feb. 20, 1896. Rehearing denied, Oct. 20, 1896.]

SLEEPING-CAR COMPANY.— *Not Liable as an Insurer of Baggage.*— Sleeping-car companies are not liable as insurers of wearing apparel and effects belonging to passengers upon their cars, as inn-keepers would be liable, or as common carriers are held liable for baggage intrusted to them, while the passengers are occupying the berths assigned them, and are themselves in charge of their baggage. *p. 277.*

SAME.— *When Responsible for Baggage as a Common Carrier.*— Where a passenger of a sleeping-car delivers his baggage to the porter of the car to be by him carried from the car to the reception room of the depot, and such porter undertakes to do so and takes the same into his possession, the sleeping-car company becomes responsible as a common carrier for the safe delivery of such baggage. ROSS, J., dissenting. *p. 280.*

SAME.— *Negligence.—Notice Posted in Car.*—A sleeping-car company can not relieve itself from liability for the loss, by its negligence, of the effects of a passenger, by posting up in the car a notice by which it attempts to relieve itself of such liability; especially where such notice is not brought to the knowledge of the passenger. *p. 282.*

SAME.— *Porter in Charge of Baggage While Acting Within Scope of his Employment, Not a Gratuitous Bailee.*—A porter of a sleeping-car who, acting under the rules and customs of the company and within the scope of his employment, undertakes to deliver the baggage of a passenger from the car to the depot is not a mere gratuitous bailee. *pp. 287, 288.*

SAME.—*Loss of Baggage.—Negligence or Dishonesty of Employes.*—A sleeping-car company is liable for the value of a passenger's cape which a porter in accordance with the rules of the company undertook to remove at the passenger's destination, and which by reason of the negligence or dishonesty on his part or that of another employe was lost or stolen. *pp. 282, 288.*

From the Marion Superior Court. *Reversed.*

*George Shirts, I. A. Kilbourne, W. A. Pickens* and *L. A. Cox,* for appellant.

*B. K. Elliott, W. F. Elliott, J. E. Scott, A. Rabb, F. R. Babcock* and *Winston & Meagher,* for appellees.

REINHARD, J.—The appellant sued the C., C., C. & St. L. R. W. Co. and the Wagner Palace Car Company

for the alleged loss of a seal cape, of the alleged value of $250.00, while the appellant was a passenger upon one of the cars of said Wagner Company, on the railroad and train of the other appellee.  The amended complaint alleges in substance that on the 24th day of September, 1892, the said railway company was operating a line of railway extending from the city of New York westward through the cities of Buffalo, New York, Cleveland, Ohio, and Indianapolis, Indiana, to the city of St. Louis, Missouri; and was the owner of said line from Cleveland to Indianapolis; that said palace car company on said day owned and operated over said line of railway between New York and St. Louis, a line of sleeping-cars which were drawn by the trains of said railway company under a contract or arrangement, the contents and terms of which are unknown to the plaintiff; that on said day the plaintiff was a passenger for hire on one of said railway · company's trains, running from New York City to Indianapolis, Indiana, under a contract by which she was to be carried from said New York to said Indianapolis, together with her necessary and reasonable baggage, consisting of a seal cape of the value of $250.00, and other baggage, which was to be carried from said New York to said Indianapolis, and at said last named place to be safely and securely delivered to plaintiff; that at the same time the plaintiff was a passenger for hire in a car owned and operated as aforesaid by said palace car company, and drawn as aforesaid by said railway company under a contract by which plaintiff, together with her reasonable and necessary baggage aforesaid, was entitled to be carried from New York to Indianapolis, upon the car of the said palace car company; that said last mentioned contract also provided that said palace car company should use due and proper care to protect

said baggage from loss, and further provided that said palace car company should safely and securely carry and deliver said baggage to plaintiff at Indianapolis, Indiana; that on said day said plaintiff was traveling alone, and was sick and unable to take charge of her said baggage and remove the same from said car upon arriving at Indianapolis; that when approaching the railroad station at Indianapolis, on said day, and just prior to the time when the train arrived at said station, the officers and agents of the defendants in charge of said train and car, whose duty it was to attend to the removing of said baggage from said car at Indianapolis, took charge of all of said baggage from said car to the railroad station at Indianapolis; and the plaintiff being sick, and unable to attend to the removing of her baggage, gave unto the said agents of the defendants sole and exclusive possession of said baggage that it might be removed by them from the car to the station as aforesaid; that afterwards on said day said train and car drew into the railroad station of the defendants at Indianapolis, which station was enclosed and covered, so that the car in which plaintiff was, was quite dark, and was left unlighted, and was so dark that objects in the car could not be seen; that thereupon the plaintiff alighted from said car and entered that part of the railroad station provided for the reception of passengers on defendants' trains and cars; that said officers and agents removed all of plaintiff's baggage from said car and brought it to her in the reception room of said station at Indianapolis, except the said seal cape; but in disregard of their duty the said defendants, and each of them and their agents, carelessly and negligently failed to use due care in the delivery of said cape to the plaintiff in said reception room of said sta-

tion, and wholly failed to deliver to the plaintiff the said cape; that defendants, and each of them, failed to use due care to protect the said cape from loss, but that they and their agents and officers aforesaid negligently permitted the same to remain in said car when it arrived at Indianapolis, by reason whereof the same was lost or stolen, or was lost or stolen by the officers and agents of the defendants; that said loss occurred without any negligence on the part of the plaintiff, who used all possible means to recover said cape, and in this regard has been at an expense of $——. Wherefore, etc.

To this complaint a demurrer was overruled, but as no question is made upon this ruling we need not determine the sufficiency of the complaint to withstand the demurrer. The palace car company answered the general denial, as did also the other appellee. The cause was submitted for trial to the court, and at the request of appellee, the court made a special finding of facts in the cause and conclusions of law thereon. One of the errors assigned is that the court erred in its conclusions of law on the special finding of facts.

The essential parts of the special finding are as follows:

That appellant had with her in the car two hand valises, one dressing case, one umbrella, and a sealskin cape, all of which were placed in the section occupied by plaintiff.

Prior to entering the Union Station at Indianapolis, the porter, with the knowledge of the plaintiff, placed the sealskin cape on the back of the seat she occupied, and arranged the balance of her baggage in two bundles, preparatory to carrying the same out of the car.

The appellant, though not seriously ill, was suffering from a temporary headache and fatigue owing to

her long journey, but was fully conscious of everything going on; and upon the train, by the use of proper effort and care, all objects in the car were visible to her.

After said baggage was so collected and arranged and the cape placed upon the back of the seat occupied by appellant, she paid no further attention whatever to her baggage or to said article of wearing apparel, but left them all to the care of the porter, who agreed to remove all of her baggage to the depot on the arrival of the train.

The agreement and attempt of the porter to remove said luggage of the plaintiff, including said sealskin cape, was in accordance with the rules of the company in such cases.

All the rules upon this subject are set out in the findings, though it is also found that appellant had no knowledge of such rules.

Upon the arrival of the car at the Union Station, one door was locked and the other continuously guarded by the conductor during the absence of the porter in assisting the appellant, and upon the return of the porter he immediately entered the car and looked into the section which had been occupied by appellant, but did not find the cape, nor was the same thereafter found by either the porter or the conductor.

During the entire trip of appellant her sealskin cape and other luggage with her upon the car were in her own possession.

During all of said journey the plaintiff was traveling alone, and upon the arrival of the train at the station at Indianapolis the porter of said car attempted to remove from the car to the station all of the said luggage of the plaintiff, including said sealskin cape or coat, which was so undertaken with the knowledge, consent, and express permission of the conductor of

said car, and in accordance with the usual rules and custom of said Wagner Palace Car Company in such case.

The plaintiff was the only passenger in said car for said point, Indianapolis, and in accordance with said attempt and while in the discharge of his duty as such porter, the latter assumed to remove the said luggage of the plaintiff from the car to the station, and having in his possession all of said luggage, except said cape, alighted from the car, the plaintiff immediately behind him; and the plaintiff preceded by the porter proceeded from the car through the gates of the train shed and into the waiting room of said station, and to a point near the north door of said waiting room of said station; in doing which the porter and the plaintiff were at all times within the railroad station, and the plaintiff all this time supposing that the porter had in his possession said cape with the balance of the luggage.

The porter deposited the luggage at said point near the north door of said waiting room, and then and there turned over and delivered so much thereof as he had carried from the train to the plaintiff, and immediately the porter returned to the said car. Said train was destined for St. Louis, and on said day remained at said station fifteen minutes.

Said porter left in the section so occupied by the plaintiff in said Wagner palace car, the said sealskin cape or coat, and did not carry the same therefrom with said other luggage, and did not at any time deliver the same to the plaintiff, but, on the contrary, failed and omitted to remove the same from the car, and failed to deliver the same to the plaintiff.

Upon the facts found by the court, and in the light of the averments of the amended complaint, are the appellees, or is either of them, liable to the appellant

for the loss of her garment?   Appellant's counsel do not seem to insist with any degree of confidence that there is any liability on the part of the C., C., C & St. L. R. W. Co.   It is difficult to see how that company could be held liable in view of the admitted fact that it never had the appellant's baggage in its possession. As to the railway company, therefore, we need not consume any further time or space.   What appellant's counsel do contend, however, is that the Wagner Palace Car Company is liable upon the facts pleaded and found, and that the court's conclusions were, therefore, erroneous.

As a general rule, sleeping-car companies are not liable as insurers of the wearing apparel and effects belonging to passengers upon their cars, as innkeepers would be liable, or as common carriers of passengers are usually held liable for baggage intrusted to them, and who incidentally undertake to forward the same to the place of destination of the passenger and there deliver to him.   In the case of a common carrier, the passenger usually consigns to its entire and exclusive care and custody the baggage he desires to have forwarded, by himself ceasing to exercise any oversight or supervision over the same whatever, while it is in transit, or at least while it is in the carrier's control, and the carrier becomes an insurer for the safe delivery of the property, as in cases of shipment of freight by carriers of goods.   All that the passenger has to do in that kind of a case, in order to create a liability by the carrier, is to show the delivery of the goods to the carrier, and that they were accepted by the latter under an agreement, express or implied, to carry and to deliver them, and the failure to do so.   Toledo, etc., R. R. Co. v. Tapp, 6 Ind. App. 304.

Sleeping-car companies do not usually receive into their sole custody the effects or luggage of the pas-

senger to be forwarded to him, but the passenger retains the same in his own possession and control while occupying the berth or section of the sleeper assigned to him.

In the case of *Woodruff Sleeping and Parlor Coach Co. v. Diehl*, 84 Ind. 474, our Supreme Court very clearly defined the duties and liabilities of sleeping-car companies toward occupants of berths upon their coaches. It was there held that such companies are not liable, either as innkeepers or common carriers, for the loss of goods or money, but that they are responsible for such losses when the same occurred through the negligence of the company or its servants. Further than this the case referred to does not go. It only defines the duties and liabilities of sleeping-car companies while the passenger is occupying the berth or section assigned to him. What relation they sustain to him respecting his baggage while the same is being taken to and from the car by the company's servants is not determined.

Negligence being but a failure to discharge a duty which one person owes to another, the question of whether there was or was not negligence on the part of the sleeping-car company would seem to depend upon the further question whether the company had failed to discharge some duty owing to the passenger or occupant of the berth from it.

It would seem that where, as in this case, the porter of the car takes charge of and undertakes to remove all of the passenger's effects from the car to the waiting room of the station, or even to the foot of the steps outside of the car, the failure to remove all of such property and consequent loss of any part thereof, would constitute negligence in the sleeping-car company. The Diehl case, above cited, declares that the case of an occupant of a berth upon a sleeping-car is

very much like that of an occupant of a stateroom on a steamboat; that the passenger in either of such cases is invited to disrobe himself and retire for the night to sleep; that he has a right to throw aside such care and precaution as men usually exercise when awake, and to intrust his person and such articles as he usually carries to the care and vigilance which the carrier in whose charge he has placed himself, undertakes to exercise in his behalf.

The rule laid down by our Supreme Court seems to be supported by the weight of authority, although at least one case has been brought to our attention which holds the sleeping-car company liable in such a case as an innkeeper. *Pullman Palace Car Co.* v. *Lowe.* 28 Neb. 239, 44 N. W. 226.

In *Pullman Palace Car Co.* v. *Pollock*, 69 Tex. 120, 5 S. W. 814, 34 Am. and Eng. R. R. Cases, 217, it was held that a sleeping-car company, while not liable,as a common carrier of passengers for baggage, in its coach when the traveler himself has possession of it, or as an innkeeper as to guests, it is responsible as a common carrier of passengers would be in relation to the baggage of a passenger not given into its exclusive custody; and if, through failure of the carrier to exercise reasonable care, the baggage is stolen, the company is liable therefor, although the train to which the car is attached belongs to another company.

In a Massachusetts case practically the same rule was laid down, that although a sleeping-car company is not liable as an innkeeper for baggage stolen, still if the loss occurs through the want of proper care of such company it is liable, and any rule to the contrary, if not known to the passenger, cannot avail the company. *Lewis* v. *New York Sleeping Car Co.*, 143 Mass. 267; 28 Am. and Eng. R. R. Cases, 148, 9 N. E. 615.

Of course the company's liability cannot be said to

end until after the passenger has safely reached his destination with all his effects.

Moreover, while it is true that a sleeping-car company, acording to the authorities cited, is not liable as an innkeeper or common carrier while the passenger is occupying the berth assigned him in the car, and is himself in charge of his baggage, it does not follow, we think, that such company may not become responsible as a common carrier when it undertakes to discharge the duties of such before the end of the passenger's journey. It seems to us that when the appellant in this case delivered to the porter of the car her baggage to be by him carried to the reception room of the Union Depot at Indianapolis, and he undertook to do so, and took the same in his possession, the company became responsible as a common carrier for the safe delivery of the baggage intrusted to him, including the cape. The taking of the baggage by the porter was the acceptance of it by the company for the purpose of its delivery at the station. When the company by its porter undertook to deliver the baggage and the latter failed to deliver it, the company became liable the same as a common carrier would be liable to a passenger who had kept his baggage in his own custody on the train until he arrived at his destination, where it was taken in charge by a servant of the company, whose duty it was to take charge of it, and who never delivered it. Hence, granting that sleeping or palace car companies are not common carriers in the ordinary sense, and that as long as the baggage is retained by the passenger, such a company cannot be held accountable for it in case of loss, except it be through the negligence of the company, yet if they take the baggage into their possession or custody, they may, we think, in proper circumstances, be held to the duties and liabilities of common carriers.

If, as is held in *Pullman Palace Car Co.* v. *Pollock,* *supra,* the sleeping-car company's liability is similar to that of a common carrier of passengers when the passenger's baggage is retained in his own custody, then if the baggage be given into the custody of the sleeping-car company or its servants, the company will incur the same responsibility as a carrier of passengers. See Hutchinson on Carriers, section 690, *et seq.*

In *Richards* v. *Railway Co.,* 7 Man. G. & S., 62 E. C. L., 839, the facts were that plaintiff's wife was a passenger on a railway carriage, and that a dressing case which she was taking with her was placed in the carriage under the seat, and upon arrival at the station the porters undertook to carry the baggage from the railway carriage to the hackney carriage, which was to convey her to her residence, and that in this process of moving, the dressing case was lost. The question was whether it had ever been delivered to the company so as to make the latter liable, and the judges were all of the opinion that it had been, and that the plaintiff was entitled to a verdict.

A similar holding was made in *Bunch* v. *Great Western R. W. Co.,* 17 Q. B. Div. 215, where the plaintiff's wife, forty minutes before train time, went into the station where the railway porter took charge of her baggage, a portion of which was to be put in the car with her, of which she informed the porter. While plaintiff's wife was out of the station for a short time the part of the baggage which was to be taken in the car with her was found missing, and the defendant company was held liable, the court holding that as long as the passenger's baggage, although intended to be taken into the train with the passenger, is in the custody of the porter for the purpose of transit, either at the commencement or the conclusion of the journey, the railway company is the common carrier of it; but

where it is put in the car and is partially under the control of a passenger, the company is no longer a common carrier, but is liable for negligence only. The case went to the House of Lords, where the verdict was sustained, Lord Bramwell alone dissenting. 13 App. Cas. (H. of L.) 31. See also *Butcher* v. *Railway Co.*, 16 C. B. 13; *Great North. R. W. Co.* v. *Shepherd*, 8 Exch. 30.

But if we are wrong in our conclusion that by reason of the delivery of the garment to the porter by the appellant, the Wagner company became liable as a common carrier, it cannot be denied, we think, that the facts found show a clear case of negligence. Sleeping-car companies are required at least to exercise reasonable care and watchfulness over the effects of their passengers, or guests, and if they are guilty of negligence in this respect, they must in proper cases respond in damages, and this is true even though the company attempt to relieve itself from responsibility by its own rule, posted up in the car, especially where the notice is not brought to the attention of the passenger. For an able discussion of this subject, see an article by W. F. Elliott, in 30 Cent. L. J. 248.

In a recent case decided by the Supreme Court of Georgia, it was held that when a passenger who has paid the customary fare on a sleeping-car, loses his property or the same is taken from his possession, it is *prima facie* negligence on the part of the company, and the burden is upon the latter to show that the loss did not occur by reason of a failure upon the part of its employes to exercise proper care over the property. *Kates* v. *Pullman Palace Car Co.*, 95 Ga. 810, 23 S. E. 186.

The doctrine there announced is eminently just and equitable, and applies with peculiar force, we think, to the case in hand. For an analogous holding in a case

of a common carrier of passengers, see *Louisville, etc., R. W. Co.* v. *Nicholai,* 4 Ind. App. 119. The facts found specially are such as to show culpable negligence on the part of the servant of the Wagner company, and in the absence of any showing that the loss of the appellant's cape was not attributable to such act, the presumption of negligence becomes conclusive.

Hence, whether said company was responsible as a common carrier, or whether we regard its failure to deliver the cape to the appellant as a breach of duty, such as must be characterized as negligence, we are of opinion that upon the facts found specially there is a liability.

If we are correct in either view, the court erred in its conclusion of law that the Wagner company was not liable.

Judgment reversed, with directions to the court below to restate its conclusions of law in conformity to the views expressed in this opinion, to the effect that the appellee, The Wagner Palace Car Company, is liable to the appellant for the value of the cape.

Ross, J., dissents.

Davis, J., did not participate in the consideration of this case.

### On Petition for Rehearing.

Reinhard, J.—The learned counsel for appellee Palace Car Company have filed able and exhaustive briefs in support of their petition for a rehearing in which they seek to convince us in strong but courteous language that the conclusion reached in our former opinion is radically at variance with the doctrine as declared in the best considered American cases and should, therefore, not be permitted to stand. In view of the earnestness and evident sincerity with which counsel have discussed the questions in dispute, no less than the high regard we entertain for the learned

counsel and their standing in the profession, and the importance of the questions involved, we have devoted much time and careful study to a second examination of the case in its various phases and are constrained to say that we still regard the result reached in our original consideration as just and proper.

Counsel insist that we were in error with regard to the fact stated in the former opinion, that there was any agreement between appellant and the porter of the car company that the latter was to remove the appellant's cape or coat from the car, or that there was a complete delivery of the garment to the porter.

While the writer may have been a little unfortunate in the use of the word "agreement" respecting the circumstances of the removal of the property from the sleeping-car, it still remains true, we think, that the special findings of the court show fully and conclusively that the appellant's luggage, including the garment referred to, was given in charge of the porter just before the train stopped at the Union Station in Indianapolis, and that he took the same in charge and undertook to remove it from the car for the appellant in accordance with the rules of the company. In support of this statement we refer to the following findings of the court:

"VIII.—That said train arrived at Indianapolis on the day aforesaid about one hour late, and just before the arrival at the Union Station in the city of Indianapolis, the porter of said car, assisted by the plaintiff, collected all of said luggage together, including said seal skin cape or coat, in said section convenient for removing from the train. The porter, with the knowledge of the plaintiff, placed the seal skin cape on the back of the seat she occupied, and arranged the balance of her luggage in two bundles, preparatory to carrying all of the same out of the car.

"IX.—Without the station the sun was shining brightly and the day was very warm, and the plaintiff was suffering from a temporary headache and fatigue owing to her long journey, at the time of such arrival, but was fully conscious of everything going on; and upon the train coming into the Union Station at said city from the lightness without and the darkness within, the plaintiff was unable to see objects within the car readily and distinctly, owing to the construction and extent of the train sheds and station at said point, but with the use of some additional effort and care all objects in the car were visible. After said luggage was so collected and arranged the plaintiff paid no further attention to it, but left it all to the care of the porter.

"X.—During all of said journey plaintiff was traveling alone, and upon the arrival of the train at the station at Indianapolis, the porter of said car attempted to remove from the car to the station all of the said luggage of the plaintiff, including said seal skin cape or coat, which was so undertaken with the knowledge, consent and express permission of the conductor of said car, and in accordance with the usual rules and custom of said Wagner Palace Car Company in such case."

If this was not an express agreement it was so by the fairest implication arising from the conduct and acts of the parties. These acts and conduct not only import an agreement but an actual attempt to execute the same by the removal of the property, in furtherance thereof, and they lack no element whatever which goes to make a complete delivery. This is true, unless it can be said that when the porter took charge of the luggage he had no authority to do so and was acting entirely outside of the apparent scope of his employment. That, however, cannot be, if for no

other reason than the one contained in the finding last above set forth that "the porter attempted to remove from the car to the station all of the said luggage of the plaintiff, including said seal skin cape or coat, *which was so undertaken with the knowledge, consent and express permission of the conductor of said car, and in accordance with the usual rules and customs of said Wagner Palace Car Company in such case.*"

If, as counsel insist, "there is nothing in the record to show that sleeping-car companies make a common practice of removing the baggage of passengers from their cars to stations," there is nevertheless here an express finding that this sleeping-car company made such a practice and that it was in accordance with "its usual rules and customs" to do so. It will hardly do to say that in spite of this custom and rule the appellant would be bound by some rule of the company to the contrary, of which the passenger had no actual knowledge or information, so far as the findings disclose, although it may have been posted in a conspicuous place in the car.

But if there were no such finding, as that the porter undertook to remove the cape in accordance with the rules of the company, we think we could still take judicial knowledge of the fact that sleeping-car companies have porters whose duty it is to assist the passengers with their baggage on and off the cars, and we apprehend that if the appellee's porter had refused to remove the luggage of the appellant, under the circumstances of this case, and she had reported him to the company he would have been promptly dismissed from appellee's employment. We have not said, and do not now declare that the porter must remove all the luggage of every passenger from the car, but we do say, and in this we think every official of the appellee who is connected with the sleeping-car service

will bear us out, that if a lady passenger is about to leave the car at the end of her journey, having traveled all the way from New York to Indianapolis, and being the only passenger in the car, and having with her a considerable quantity of luggage which it would be burdensome and difficult for her to carry, it is the duty of the porter to assist her by removing such luggage or as much thereof as she cannot conveniently carry, from the car; and we are further of the opinion that when any portion or article of such luggage has been thus taken in charge by the porter, the car company, in whose service such porter is engaged, becomes responsible therefor, and if after it has gone into the custody of such servant such article is lost or stolen, the company is bound by every principle of right and justice to account for its value. If it be said that the strict rules of law rendering an ordinary carrier of passengers liable as an insurer of baggage consigned to its exclusive care and custody on the journey cannot be applied, we answer that the company is nevertheless liable as the ordinary railroad company would be liable for the baggage of its passengers not given into its exclusive possession, by reason of the negligence of the servant in the handling of the baggage. We think not only the English cases, but the American decisions cited in our former opinion abundantly support this doctrine. The facts upon which the court below rendered judgment in favor of the company are all before us in the special finding, and they are, in our view, such as can lead to but one conclusion, that being the negligence of the company's servant.

Counsel, in the printed brief submitted, earnestly contend that the porter in such a case as this is "a mere gratuitous bailee." We do not so regard it. We are here dealing with a loss which was the direct re-

sult of the negligent performance of an act of a servant which the trial court finds was performed in accordance with the usual rules and customs of the master in whose service he was then engaged, and hence, within the scope of the servant's employment. The performance of this act was by the clearest implication included in the accommodations for which the injured party had contracted with and paid the master. To say that such an act was but the result of a private arrangement between the injured party and such servant, for which nothing had been paid, is, in our judgment, radically unsound. Indeed, it appears to us that the application of the rule governing mandates or gratuitous bailments to a case like this would be a perversion of an otherwise wholesome doctrine to the accomplishment of a most unconscionable result, enabling a party to escape a responsibility which by every consideration of justice it ought to bear.

Counsel also contend that the mere loss of personal effects by a passenger on a sleeping-car is not *prima facie* evidence of negligence on the part of the servants of the company. While this may be a correct rule in the abstract, it does not apply to the case in hand. The facts offered show more than "the mere loss" of the appellant's property. They also disclose the circumstances under which the loss occurred, and we think they are such as to conclusively render the company guilty of negligence.

But counsel complain that we did not state in the former opinion in what manner the porter was negligent. We thought we had made this sufficiently plain. He undertook to remove the appellant's cape from the car, according to the rules and customs of the company. He took the cape in charge for that purpose, but failed to do so, and it was lost. This was negligence. Moreover, it is difficult to conceive. how

the cape could have been lost without the collusion of appellee's servants, or the positive wrong of one of them, while the porter was out of the car with appellant's baggage, or a portion of it, without being watched by the conductor. We are not required to presume that the appellant's garment vanished away in some supernatural manner. If the facts found are true, no human being had access to it without being observed by the servants of the appellee, save the porter and the conductor, during the time the train stopped at the station. The appellant's property was lost without any fault on her part. No one knew or or could reasonably be held to have known what became of it but the porter and conductor. The inference is obvious and irresistible that it was lost either through the positive wrong or the inexcusable negligence of the company's servants, for which the company should respond in damages.

The petition is overruled.

### DISSENTING OPINION.

Ross, J.—I am unable to concur in holding either that the appellee, the Wagner Palace Car Company is liable as a common carrier, or that a duty was owing to appellee from it, which it neglected to perform.

The substance of the facts found by the jury in their special verdict, after finding that the appellee railroad company, with other railroad companies, formed a line from New York City to Indianapolis; that appellant purchased a ticket from the former to the latter point, and entered a car belonging to the appellee, the Wagner Palace Car Company, attached to the train upon which she took passage, having previously purchased a ticket entitling her to the use of a section in said car, are as follows: That at

Galion, Ohio, she was transferred from said car in which she had ridden from New York, to one which carried her to Indianapolis; "that at the time of the transfer the plaintiff had with her her luggage, among other things, a sealskin cape of the value of $250.00, which with her other luggage, was, by the porter of the sleeping-car in which she arrived at Galion, transferred with herself to said car destined for Indianapolis; that during all of said journey upon the said car of the defendant, the Wagner Palace Car Company, the plaintiff had with her, luggage as follows: Two hand valises, one dressing case, and one umbrella, in addition to the sealskin cape, all of which were by the respective porters of said cars placed in the section occupied by the plaintiff; that said train arrived at Indianapolis about an hour late, and just before the arrival in said Union Station in said city of Indianapolis, the porter of said car, assisted by the plaintiff, collected all of said luggage together, including said sealskin cape, in said section for removing the same from the train. The porter, with the knowledge of the plaintiff, placed the sealskin cape on the back of the seat she occupied. After said luggage was so collected and arranged, the plaintiff paid no further attention to it, but left it all to the care of the porter. During all of said journey the plaintiff was traveling alone; and upon the arrival of the train at the station at Indianapolis, the porter of said car attempted to remove from the car to the station all of said luggage of the plaintiff, including said sealskin cape or coat, which was so undertaken with the knowledge, consent, and express permission of the conductor of said car, and in accordance with the usual rules and custom of said Wagner Palace Car Company in such cases. Said porter left in the section so occupied by the plaintiff in said Wagner palace car, the said sealskin

cape or coat, and did not carry the same therefrom with said other luggage, and did not at any time deliver the same to the plaintiff, but, on the contrary, failed and omitted to remove the same from the car, and failed to deliver the same to the plaintiff. Said sealskin cape, as the plaintiff and porter passed from said car, was resting upon the back of the seat of the section so occupied by the plaintiff, and was not removed therefrom by either the plaintiff or said porter, but both passed from said car without either removing the same. The plaintiff relied upon the service of the porter in delivering said luggage to her, and at the same time believed he had collected and was removing all of the same from the car, and had no knowledge that any part of her luggage had been left in the car until immediately after the porter had returned to the car, when the plaintiff for the first time discovered that the sealskin cape had not been delivered to her. From the point at which the plaintiff and said porter alighted from said car in the train sheds to said point in said waiting-room where the porter delivered said baggage to the plaintiff, the distance was about 300 feet. During the time said train stopped in said station one door of the car was kept locked. The other door, through which the passengers were permitted to pass in and out of the car, was continuously guarded and watched by the conductor of the car, then and there an employe of the Wagner Palace Car Company. Said train, with car attached, remained in the station after arrival, before departing for St. Louis, fifteen minutes. When the porter returned to the car, after assisting the plaintiff with her luggage to said north door of the depot, he immediately reentered said car and examined the section which had been occupied by the plaintiff, but did not find said cape in said section, or upon the back of the

seat so occupied by the plaintiff, nor was said cape thereafter found by said porter or the conductor of said car; that during the trip of the plaintiff from Galion to Indianapolis, all of said luggage in the car with plaintiff remained in the section so occupied by her, and the defendants, or either of them, by employes, servants or otherwise, did not take the same into possession in other manner than as stated in the previous findings; that in addition to the said luggage with the plaintiff in the car, she was traveling with other luggage, not with her in the car; that the time occupied by the porter in passing from the car to the station at Indianapolis to said north door of the depot building with the plaintiff, and returning to the car, was four or five minutes; that the defendant, the Cleveland, Cincinnati, Chicago & St. Louis Railway Company, did not have any employe or servant in the Wagner palace car that the plaintiff was a passenger in, but said defendant's train conductor in charge of the train to which said car was attached did have supervision over said car, including the conductor and porter of said car. Said conductor and porter were in the employ and service of the Wagner Palace Car Company."

It is also found in the special verdict that under the rules of the company neither it nor its servants would undertake to be custodians or guardians of the personal effects, wearing apparel, or valuables of passengers, and its servants were forbidden from saying or doing anything that might lead passengers to understand that it would insure absolute security, and that "under no circumstances will baggage, wearing apparel or other property of passengers be taken charge of by any employe of this company."

From the facts found by the jury it appears that the appellee's contract with the Wagner Palace Car Com-

pany was that she might occupy a section in its sleeping-car from New York City to Indianapolis; and it also appears that she did occupy such section in one of its cars and that with her and in her possession she had a number of articles of baggage including a sealskin coat or cape; that upon the arrival of the train at Indianapolis the porter undertook to assist appellant with her baggage from the car and into the station waiting-room, which was 300 feet distant, but that he failed to pick up and take with him the sealskin coat which appellant had; that after he returned to the car he could not find the coat.

It is a matter of common knowledge that sleeping-car companies do not undertake to transport either persons or property from one place to another. In fact, the transportation, not only of those who have hired the use of apartments in a sleeping-car, but of the sleeping car itself, is done by a railroad company. The railroad company, and not the sleeping-car company, contracts for the carriage of each passenger and receives the compensation therefor. The sleeping-car company is not therefore a carrier and is not liable as such.

If the appellant had been injured by the derailment of the train on which she was being carried she would have had no right of action against the appellee, the Wagner Palace Car Company, for its contract was not one to carry her safely, but was simply to furnish a berth in which to sleep at night and a seat in which to sit during the day, and her right of action, if any she would have, would be against the appellee, the railroad company with which company she had contracted to be carried safely to Indianapolis.

The obligation resting on the appellee, sleeping-car company, under its contract with the appellant, was to furnish her with the accommodations contracted

for and to use reasonable care to protect her and her property from harm until she reached Indianapolis, and then to assist her with her baggage in alighting from the train. It did not undertake to be responsible for her baggage in any other manner or to any greater extent than this, either in or out of its car. Neither did it agree to deliver such baggage to her at any place away from the car. The original contract, it is evident, is not sufficient to make the appellee, the Wagner Palace Car Company, liable for appellant's coat.

In Hutchinson on Carriers (2d ed.), section 700, the author after quoting from a number of cases in which the rule of liability is defined relative to steamship companies, railroad carriers, etc., says: "But that if passengers by land vehicles, such as railway trains, retain in their custody any part of their baggage, to the exclusion of the carrier's control over it, the latter can be held liable for its loss only when it has been occasioned by his negligence."

It is true that in the case of *Richards* v. *Railway Co.*, 7 Man. G. & S. (62 E. C. L.) 839, cited in the majority opinion, it was held that the railway company was liable for a loss of a part of the passenger's baggage while its servants were assisting the passengers in transferring such baggage from the car to a hackney coach, but that case was especially disapproved in the later case of *Bergheim* v. *Great Eastern R. W. Co.*, 3 C. P. Div. 221. In this latter case, the plaintiff Bergheim, after purchasing his ticket, requested the porter of the railway company to take charge of his baggage and put it on the train for him while he went to a refreshment room. The porter put the baggage on the seat of the compartment the plaintiff was to occupy and locked the door of such compartment. When the plaintiff returned the porter unlocked the door and

the plaintiff on entering the compartment, found that a bag which he had given to the porter and which had been placed in the car was missing. It was held that the plaintiff could not recover. The railway's servant not having been negligent there could be no liability, unless it was liable as a common carrier, and that it was not liable as such.

In the case of *Bunch* v. *Great Western R. W. Co.*, 17 Q. B. Div. 215, cited in the majority opinion, the doctrines announced in the case of *Richards* v. *R. W. Co.*, *supra*, was followed.

In *Talley* v. *Great Western R. W. Co.*, L. R., 6 C. P. 44, while the case was decided against the plaintiff on account of his negligence in leaving his baggage in the car while he alighted for refreshments, Willis, J., says: "There is great force in the argument that where articles are placed with the assent of the passenger, in the same carriage with him, and so in fact remain in his own control and possession, the wide liability of the common carrier, which is founded on the bailment of the goods to him and his being intrusted with the entire possession of them, should not attach, because the reasons which are the foundation of the liability do not exist. In such cases, the obligation to take reasonable care seems naturally to arise, so that when loss occurred it would fall on the company only in the case of negligence in some part of the duty which pertained to them." In *Stearn* v. *Pullman Car Co.*, 8 Ont. 171, the plaintiff sued to recover money abstracted from his pockets while he was asleep in one of the company's cars, in which he had paid for a berth. On the trial there was no evidence that the company had been negligent in any way, unless that fact was to be inferred from the fact that his money was taken while he was sleeping in the defendant's

car; and the court held that no negligence was shown and that he could not recover.

In *Dargan* v. *Pullman Palace Car Co.*, 2 Wilson (Tex. App.), p. 607, 26 Am. and Eng. R. R. Cases, 149, the court says: "While it is well settled that sleeping-car companies are to be regarded neither as innkeepers nor common carriers, nor subject to the onerous liabilities of either in respect to the property of those enjoying their accommodations, it is equally well settled that it is their duty to exercise ordinary care for the security of passengers' valuables. * * * The invitation to make use of the berth carries with it an invitation to sleep and an implied agreement to take reasonable care of the guest's effects while he is asleep." But, says the court: "Appellant's right to recover in this action therefore depends upon the want of ordinary care on the part of the appellee to protect the valise and its contents against loss. It devolved upon him to prove such want of care. Failing to make this proof he could not legally claim to recover."

In *Whitney* v. *Pullman's Palace Car Co.*, 143 Mass. 243, 9 N. E. 619, which was an action to recover for the value of a satchel and its contents, lost by plaintiff from her seat in one of the company's cars, the court says: "She had with her a small satchel or reticule, which she did not deliver to the defendant or any of its agents, but which she kept in her personal control. There was evidence to show that it was stolen while the train in which she was riding was stopping at Portsmouth, New Hampshire, for refreshments. It is clear that she cannot hold the defendant liable as a common carrier. She can only hold it liable upon the ground that her property was lost by some negligence of the defendant, and without any fault on her part."

The English cases are all cases arising between railway companies as common carriers, and their pas-

sengers, and the questions decided, all have reference to the railway companies' liability as common carriers. In this country, however, where the action is against a sleeping-car company for the value of personal baggage or the loss of money stolen from one occupying a berth in its car, the courts, with one exception, universally hold that the company is not liable as a common carrier, or as innkeepers; that the exact relation which the company bears to those hiring the use of the car is not definitely settled, but that it is its duty to use reasonable care to see that the effects of those occupying its cars are not stolen. To this extent do the holdings go, and no farther, except in the one case to which I shall call attention shortly. In addition to the authorities quoted from as sustaining my views that the appellee, the Wagner Palace Car Company, is not liable unless it failed to perform some duty which it owed to the appellant, in other words, that it was not an insurer, but is liable only in the event that it has been in some manner guilty of negligence, I cite *Lewis* v. *New York Sleeping Car Co.*, 143 Mass. 267, 9 N. E. 615, 28 Am. and Eng. R. R. Cases, 217; *Pullman Palace Car Co.* v. *Gardner*, 3 Penny. (Pa. Sup.) 78, 16 Am. and Eng. R. R. Cases, 324; *Carpenter* v. *New York, etc., R. R. Co.*, 124 N. Y. 53, 26 N. E. 277, 47 Am. and Eng. R. R. Cases, 421; *Barrott* v. *Pullman's Palace Car Co.*, 51 Fed. 796; *Pullman Palace Car Co.* v. *Gavin*, 93 Tenn. 53, 58 Am. and Eng. R. R. Cases, 585; *Pullman Palace Car Co.* v. *Freudenstein*, 3 Colo. App. 540, 58 Am. and Eng. R. R. Cases, 589.

It may be conceded as settled, as already stated, that a sleeping-car company impliedly undertakes to use reasonable care to protect the baggage and effects of its patrons from being injured or stolen, and yet it does not undertake that no dishonest person shall

enter or procure accommodation in its cars, for it has no means to ascertain whether or not one applying for accommodations is honest. Its undertaking is simply to use reasonable care to see that while one person sleeps or is temporarily absent from his berth or seat that another shall not injure or appropriate his property. And it is not sufficient to make the company liable, simply to show the loss of the property; but there must be evidence tending to prove that it was negligent in some duty owing to the patron.

The case which, as heretofore stated, is an exception to the rule is that of *Pullman Palace Car Co.* v. *Lowe*, 28 Neb. 239, 44 N. W. 226, cited in the prevailing opinion. In that case the court by Maxwell, J., holds that the law imposes upon a sleeping-car company the same duties as are imposed upon an innkeeper, and makes it subject to the same liabilities.

In this State the question is apparently settled in harmony with the great weight of the authorities as above cited, for in the case of *Woodruff Sleeping and Parlor Coach Co.* v. *Diehl*, 84 Ind. 474, the court says: "In *Pullman Palace Car Co.* v. *Taylor*, 65 Ind. 153, 32 Am. R. 57, it was thought not to be necessary, for the purposes of the case, 'to determine whether the appellant is to be regarded as a common carrier or otherwise.' It would seem that this question is not presented for decision in the case at bar; for the court at special term expressly decided in its conclusions of law upon the facts found, that the appellant was not responsible as a common carrier, and that it could not be held to the liability of an innkeeper. * * * But it may properly be remarked that it is apparently settled by the decided cases to which our attention has been directed, that sleeping-car companies are not liable, either as innkeepers or common carriers, for personal goods stolen from the person of an occupant

of a berth in a sleeping-car. *Welch* v. *Pullman Palace Car Co.*, 16 Abb. (N. S.) 352; *Palmeter* v. *Wagner*, 11 Alb. L. J. 149; *Plum* v. *Pullman Sleeping-Car Co.*, 13 Alb. L. J. 221; *Pullman Palace Car Co.* v. *Smith*, 73 Ill. 360, 24 Am. R. 258." After quoting from a number of authorities showing that the rule applicable to such companies was that they should be liable only for the want of reasonable care in the protection of the property of their patrons, the court holds that in that case the company was liable because it was found that the company's servants had been negligent in the performance of the duties owing to Mr. Diehl by reason of which his money had been taken from his pocket while he slept.

In the case at bar the appellant's counsel concedes that there can be no recovery on account of any negligence shown, but they insist "that the property being lost while in possession of the sleeping-car company, that the sleeping-car company is responsible as an insurer in the same manner that an innkeeper is responsible for the safe protection and delivery to the owner of any property put in its possession by a patron." And they say: "We of course bear in mind that the Supreme Court of this State in *Woodruff Co.* v. *Deihl, supra,* declined to hold sleeping-car companies liable, 'either as innkeepers or common carriers for personal goods stolen from the person of an occupant of a berth in a sleeping-car.' * * * And so we contend that judgment should be ordered in favor of the plaintiff for the reason that at the time the cape was lost it was in the hands of the defendants as common carriers."

If the majority opinion does not proceed upon the theory that the appellee, the Wagner Palace Car Company, is liable as a common carrier, as the appellant insists, can it be said that because it agreed to

furnish appellant with a berth the responsibility of an innkeeper attached to it?

Judge Thompson in his work on Carriers of Passengers (p. 530, section 20), says: "It seems to be settled by the few adjudged cases upon this subject that sleeping-car companies are to be regarded neither as innkeepers nor common carriers, nor subject to the onerous liabilities of either·in respect of the property of those enjoying their accommodations. It is evident that these flying nondescripts do not come within the definition of an inn: 'it must be a house kept open publicly for the lodging and entertainment of travelers in general, for a reasonable compensation. If a person lets lodgings only, and upon a previous contract with every person who comes, and does not afford entertainment for the public at large, indiscriminately, it is not a common inn.' The peculiar liability of the innkeeper is one of great rigor, and should not be extended beyond its proper limits; and it seems that it would be such an extension to apply it to the class of cases under discussion. Thus, the keeper of a coffee house, or private boarding or lodging house, is not an innkeeper in the strict sense of the term."

In the case of *Pullman Palace Car Co.* v. *Smith,* *supra,* which was an action brought by Smith against the company, to recover a sum of money stolen from him while occupying a berth in its car, the trial court instructed the jury that if they found from the evidence that the plaintiff's money was stolen from him while he was sleeping in the company's car, he was entitled to recover. On appeal to the Supreme Court, after stating that the question involved was whether or not the company was liable as an innkeeper, says:

"Kent, in defining an inn, says: 'It must be a house kept open publicly for the lodging and entertainment

of travelers in general, for a reasonable consideration. If a person lets lodgings only, and upon a previous contract with every person who comes, and does not afford entertainment for the public at large, indiscriminately, it is not a common inn.' 2 Kent Com. 595. This is substantially the same definition as is given in all the books upon the subject.

"But the keeper of a mere coffee house, or private boarding or lodging house, is not an innkeeper, in the sense of the law. Id. 596; *Dansey* v. *Richardson*, 3 Ellis & B. 144 (E. C. L., vol. 77); *Holder* v. *Toulby*, 98 E. C. L. 254; *Kisten* v. *Hilderbrand*, 9 B. Mon. 72. It must be a common inn, that is, an inn kept for travelers generally, and not merely for a short season of the year, and for select persons who are lodgers. Story on Bailm., section 475, and cases cited in note. The duty of innkeepers extends chiefly to the entertaining and harboring of travelers, finding them victuals and lodgings, and securing the goods and effects of their guests; and, therefore, if one who keeps a common inn refuses either to receive a traveler as a guest into his house, or to find him victuals and lodging, upon his tendering him a reasonable price for the same, he is not only liable to render damages for the injury in an action on the case, at the suit of the party grieved, but also may be indicted and fined at the suit of the king. 3 Bac. Ab. Inns and Innkeepers, C. The custody of the goods of his guest is part and parcel of the innkeeper's contract to feed, lodge and accommodate the guest for a suitable reward. 2 Kent Com., 592.

"From the authorities already cited, it is manifest that this Pullman palace car falls quite short of filling the character of a common inn, and the Pullman Palace Car Company, that of an innkeeper.

"It does not, like the innkeeper, undertake to ac-

commodate the traveling public, indiscriminately, with lodging and entertainment.

"It only undertakes to accommodate a certain class, those who have already paid their fare and are provided with a first-class ticket, entitling them to ride to a particular place.

"It does not undertake to furnish victuals and lodging, but lodging alone, as we understand. There is a dining car attached to the train, as shown, but not owned by the Pullman company, nor run by them. It belongs to another company, the Chicago and Alton Dining Car Association. Appellant, as we understand, furnishes no accommodation whatever, save the use of the berth and bed, and a place and conveniences for toilet purposes. We would not have it implied, however, that even were these eating accommodations furnished by appellant, it would vary our decision; but the not furnishing entertainment is a lack of one of the features of an inn.

"The innkeeper is obliged to receive and care for all the goods and property of the traveler which he may choose to take with him upon the journey. Appellant does not receive pay for, nor undertake to care for, any property or goods whatever, and notoriously refuses to do so. The custody of the goods of the traveler is not, as in the case of the innkeeper, accessory to the principal contract to feed, lodge and accommodate the guest for a suitable reward, because no such contract is made.

"The same necessity does not exist here, as in the case of a common inn. At the time when this custom of an innkeeper's liability had origin, wherever the end of the day's journey of the wayfaring man brought him, there he was obliged to stop for the night, and intrust his goods and baggage into the custody of the innkeeper. But here, the traveler was not

compelled to accept the additional comfort of a sleep-ing-car; he might have remained in the ordinary car; and there were easy methods within his reach by which both money and baggage could be safely transported. On the train which bore him were a baggage and ex-press car, and there was no necessity of imposing this duty and liability on appellant.

"It cannot be supposed that any such measure of duty or liability attached to appellant, as is declared in the quotation cited from Bacon's Abridgment to belong to an innkeeper. The accommodation furnished appellee was in accordance with an express contract entered into when he bought his berth ticket at Chi-cago, which was for the use of a specified coach from Chicago to St. Louis, and appellant did not render a service made mandatory by law, as in the case of an innkeeper.

"But if it should be deemed that, on principle merely, this company would be required to take as much care of the goods of a lodger, as an innkeeper of those of a guest, the same may be said with ref-erence to the keeper of a boarding house, or of a lodging house. In *Dansey* v. *Richardson, supra,* where the innkeeper's liability was refused to be extended to a boarding house keeper, it was said by Coleridge, J.: 'The liability of the innkeeper, as, indeed, other incidents to his position, do not, however, stand on mere reason, but on custom, growing out of a state of society no longer existing.' In *Holder* v. *Toulby, supra,* where it was held the law imposed no duty upon a lodging house keeper to take due care of the goods of a lodger. *Calye's Case,* 8 Co. Rep. 32, was designated as *fons juris* upon this subject, where it was expressly resolved that, though an innkeeper is responsible for the safety of the goods of a guest, a lodging house keeper is not. And in *Parker* v. *Flint,* 12 Mod. 255,

'if,' says Lord Holt, 'one come to an inn and make a previous contract for lodging for a set time, and do not eat or drink there, he is no guest, but a lodger, and, as such, is not under the innkeeper's protection; but if he eat or drink there, it is otherwise, or if he pay for his diet there, though he do not take it there.'

"The peculiar liability of the innkeeper is one of great rigor, and should not be extended beyond its proper limits. We are satisfied that there is no precedent or principle for the imposition of such a liability upon appellant."

In *Welch* v. *Pullman Palace Car Co.*, 1 Sheld. (N. Y.) 457, it appears that the plaintiff hired a berth in one of the company's cars to be used by him while traveling from Detroit to Buffalo. When he retired he placed his overcoat in the vacant berth above him and hung up other articles in or over his berth, which was the usual way of disposing of such for the night. When the train arrived at Buffalo his overcoat was missing. There was no evidence of negligence on the part of the company or its servants, except the mere fact of the loss of the coat. The court, by Sheldon, J., says: "It cannot, truthfully, be contended, that there was any delivery of the coat into the custody of the defendant, different from the delivery of it that he would have made to the railroad company, had he elected to travel by the ordinary cars. He carried it with him to wear or to put off, as the exigencies of his health or the weather required. There was no place to deposit it, and he sought none, nor was it expected that one would be provided.

"Upon these facts the defendant should not be held liable. It is unnecessary to remark that the extra payment made to the defendant, procured for the plaintiff, many other comforts and luxuries, besides that of lying down and sleeping if he chose. He ob-

tained comparative protection for himself and his property, and immunity from disturbance during the passage. These facts afford no solution of the question. But the fact exists, that the most discreet and vigilant officer of a car cannot prevent depredations, and if this duty is imposed by law, it is impracticable to meet the responsibility, and the law requires nothing unreasonable or unjust of any member of society.

"It is sought to charge the defendant with the responsibility of the innkeeper, upon the assumption, that the law implied a contract or imposed a liability of the same nature. That responsibility, was declared by the civil law to be as strict and severe as that of common carriers, and modern jurisprudence has adopted and applied the principle. But it went no further, as is sought to be done in this case. The liability of the innkeeper arises out of facts which do not exist in this case. He cannot lawfully refuse to receive guests to the extent of his reasonable accommodations, nor can he impose unreasonable terms upon them. The necessities of the traveler required these just rules to be adopted. As a compensation for the responsibility thus incurred, he has a lien upon all the property of the guest at the inn for all his expenses there. There are no facts in this case, justifying the application of such rules of law. The defendant could not be compelled to receive and entertain passengers, however amenable it might be upon its contract with the carrier, and it had no lien for the price of the accommodations. The traveler voluntarily, and not of necessity, availed himself of what was placed before him for his comfort, and he cannot cast the burden of care and diligence upon the defendant, neither is it right or just that the law should do so. Unless the courts can determine, after the

most mature consideration, that it is required to apply some general, well settled principle of the common law, to a new case arising out of circumstances or emergencies, developed by the progress of society, so that common justice may be subserved and enforced among the people, it should refrain from making the application."

In *Blum* v. *Southern Pullman Palace Car Co.*, 1 Flippin (U. S.), 500, the plaintiff sought to recover for money stolen from him while asleep as a patron in one of the defendant's cars. The court after alluding to the responsibility and liability of innkeepers says: "There are good reasons for not extending such liability to the proprietor of a sleeping-car.

"1st. The peculiar construction of sleeping-cars is such as to render it almost impossible for the company, even with the most careful watch, to protect the occupants of berths from being plundered by the occupants of adjoining sections. All the berths open upon a common aisle, and are secured only by a curtain, behind which a hand may be slipped from an adjoining or lower berth with scarcely a possibility of detection.

"2d. As a compensation for his extraordinary liability, the innkeeper has a lien upon the goods of his guests for the price of their entertainment. I know of no instance where the proprietor of a sleeping-car has ever asserted such lien, and it is presumed that none such exists. The fact that he is paid in advance does not weaken the argument, as innkeepers are also entitled to prepayment.

"3d. The innkeeper is obliged to receive every guest who applies for entertainment. The sleeping-car receives only first-class passengers traveling upon that particular road, and it has not yet been decided that it is bound to receive those.

"4th. ·The innkeeper is bound to furnish food as well as lodging and to receive and care for the goods of his guests, and, unless otherwise provided by statute, his liability is unrestricted in amount. The sleeping-car furnishes a bed only, and that, too, usually for a single night. It furnishes no food and receives no luggage in the ordinary sense of the term. The conveniences of the toilet are simply an incident to the lodging.

"5th. The conveniences of a public inn are an imperative necessity to the traveler, who must otherwise depend upon private hospitality for his accommodation, notoriously an uncertain reliance. The traveler by rail, however, is under no obligation to take a sleeping-car. The railway offers him an ordinary coach, and cares for his goods and effects in a van especially provided for that purpose.

"6th.· The innkeeper may exclude from his house every one but his own servants and guests. The sleeping car is obliged to admit the employes of the train to collect fares and control its movements.

"7th. The sleeping-car cannot even protect its guests, for the conductor of the train has a right to put them off for non-payment of fare, or violation of its rules and regulations.

"I hold, therefore, that sleeping-car companies are not subject to the responsibility of innkeepers at common law, and that defendant cannot be held liable upon that ground."

In this case the sleeping-car company, by the terms of its contract with appellant did not in addition to furnishing her with a berth and the accommodations of its car also agree that it would, after her arrival at her destination accept her baggage and wraps and guarantee their safe delivery to her in the waiting room of the station. That was not its duty and al-

though she may in good faith have intrusted to appellee's porter the charge and control of her effects, believing that he would deliver them safely to her in the waiting room of the station, that belief could create no liability on the part of the appellee. The company must either have undertaken, by its original contract with the appellant, to be answerable to her for her baggage and wraps, or else under the facts in this case there can be no liability on its part.

"What, then, shall be the measure of responsibility of these companies? ° All the cases seem to agree that their duty is to exercise at least ordinary care for the security of passenger's valuables. Of course, this care must be in proportion to the danger reasonably to be apprehended. Such danger is greater at night, while the passenger is asleep, than in the daytime, when he is awake and can care for himself." Thomp. Carr. Pass. 531.

In *Pfaelzer* v. *Pullman Palace Car Co.*, 4 Wkly Notes Cas. (Pa.) 240, the plaintiff sought to recover the value of a valise and contents which he left with the porter of the defendant's sleeping-car in which he had paid and held a ticket for a berth. He gave his valises to the porter, who was sitting on the steps of the car, saying: "I am going to the water closet for a few minutes, I leave these valises in you charge!" He returned in a few minutes, when he could find but one valise the other being missing. The porter denied all knowledge of it. The plaintiff was nonsuited. Thayer, P. J., in answer to plaintiff's counsel, said: "In order to recover, you must show negligence, and to do this you must prove the nature and extent of the authority. * * * Your contract of carriage was with the Railroad Company, and the effect of your contract with the Palace Car Company was merely to give you the privilege of sleeping in the car; had there been a

stoppage of the train, no action would lie against it therefor—it is not a common carrier."

In the case of *Tracy* v. *Pullman Palace Car Co.*, 67 How. Pr. 154, the plaintiff sued to recover money stolen from him while occupying a berth in the company's sleeping-car, there being no evidence of negligence on the part of the company's servants, it was held that the company was not liable because negligence on its part could not be presumed from the mere fact that the money was stolen while the plaintiff was a patron in its car.

And the Supreme Court of Mississippi, in its opinion in the case of the *Illinois Central R. R. Co* v. *Handy*, 63 Miss. 609, which was an action brought to recover $300.00 abstracted from a pocketbook lost by the plaintiff while a passenger in the company's chair car, says:

"Because of the invitation extended to travelers by sleeping-car companies to sleep upon their cars, it has been held that they owe and assume to their patrons the duty of exercising such reasonable guard over them, to prevent theft of their personal effects, as the circumstances admit and the passenger has a right to expect. This obligation is not such as pertains to common carriers or innkeepers, and such companies do not occupy the relation of insurers against all loss under all circumstances. The accommodation offered implies a certain degree of privacy for the passenger upon his retirement to rest, an intrusion on which by the servants of the company would be rightly resented by him. If the company should be held liable to one passenger for a theft committed by another, it must be either upon the ground that it is, under the common law liability of an innkeeper, a view not sanctioned by any court, so far as we are informed, or because by its contract it may be fairly

said to bind itself to keep watch upon each traveler on its car, which would result in the establishment of a system of intolerable espionage.   One who avails himself of the comfort afforded on such cars does so with full knowledge of the facts that others, whose character the company cannot possibly know, may become fellow travelers with himself, and that the arrangement of the car into berths or sleeping chairs is such that he will necessarily, while asleep, be subjected to easy approach by any dishonest traveler in the same car.   The risk of loss from such persons he assumes as an incident of his circumstances, and the company can only be made responsible by evidence of its neglect to keep that reasonable guard which its contract implies that it will."

In *Rott* v. *New York Cent. Sleeping Car Co.*, 28 Mo. App. 199, the court says: "The settled law is, that a sleeping-car company is not the insurer of the baggage of the passenger, but that its liability, at most, is that of a bailee for hire.   In the case of the loss of a passenger's baggage or belongings it is, therefore, liable, if at all, only on the ground of negligence; and, in order to be so liable, it must have been negligent in the performance of some duty which it assumed to perform for the passenger.   That duty, so far as adjudged cases seem to have gone, is, that it will maintain in the car a reasonable watch during the night while the passenger is asleep. We now go further, and, speaking with reference to the facts of this case, we hold that the duty of keeping watch does not terminate with the period during which the passenger is actually asleep, but that it extends to keeping a reasonable watch over such of his necessary baggage and belongings as he cannot conveniently take with him nor watch himself while he is absent from his berth in

the washing-room, preparing his toilet after arising in the morning."

In the prevailing opinion it is not clearly stated whether the company is liable because it was a duty owing by the company to its patrons to accept the effects and upon demand deliver them safely, or whether the company is bound because its porter entered into a new contract by which he undertook in person to transport her effects from the company's car to the waiting-room in the station. If it is based upon the former it is contrary to the holding of the court in *Woodruff, etc., Coach Co.* v. *Diehl, supra,* and the many other cases cited except the case of *Pullman, etc., Co.* v. *Lowe, supra,* which as I have already stated is contrary to all of the other adjudications in this country on the subject. If the company's liability is made to depend upon the special undertaking or contract of the porter it is equally untenable for the reason that he had no power to make such contract which would be binding upon the company. At best the porter was but the mere servant of appellant, undertaking without hire, or it might be in anticipation of a tip, to carry her baggage and coat from the car to the waiting room of the station.

Everybody does, or, at least, ought to know that sleeping-car companies do not empower the porters of their cars to make contracts for the company. If this particular porter was vested with special powers and could make contracts for the company, that fact should have been proven and found by the jury. Without such proof the presumption is that he had no such power.

But the majority of the court seem to think that although the rules of the company specially forbid its employes from assuming to take charge of or be responsible for the baggage, wearing apparel or valu-

ables of its patrons, nevertheless the appellant could not be bound by the rule because she had no knowledge of it. If it is the law that a patron of a sleeping-car company has a right to assume that the porter's power to bind the company is unlimited I must concede that the majority's opinion is right, but if the law does not admit of such an assumption I insist that the prevailing opinion is wrong, unless, as I have heretofore stated, the original contract between the company and the appellant imposed upon it the duty of guaranteeing to her the absolute security of her baggage, wearing apparel, etc. That the contract to furnish appellant a berth in appellee's sleeping-car did not also guarantee to her absolute security for her effects, wearing apparel and valuables, is settled by the many authorities already cited.

For these reasons I think the judgment of the court below should be in all things affirmed.